PETRONA MORALES VIUDA DE VALENTÍN Y OTROS, demandantes, recurrentes y recurridos, v. ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado, recurrido y recurrente, y MANUEL SEOANE FAURA, codemandado y recurrido.

*Número:* 12580. *Resuelto:* 8 de diciembre de 1961.

*Angel Manuel Ciordia,* abogado de los demandantes, recurrentes y recurridos; *Francisco Espinosa, Secretario de Justicia Interino, Arturo Estrella, Secretario Auxiliar, Edgard S. Belaval, Procurador Auxiliar,* abogados del demandado, recurrente y recurrido; *Gloria M. Mimoso de Laguna,* abogada del codemandado y recurrido.

Sala integrada por el Juez Asociado Señor Belaval, como Presidente de Sala, y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

La Sala de Arecibo del Tribunal Superior emitió fallo en 17 de enero de 1958 declarando con lugar la demanda de daños y perjuicios contra el Estado Libre Asociado de Puerto Rico y sin lugar una acción contra Manuel Seoane Faura. En sus conclusiones de hecho determinó la Sala sentenciadora que Manuel Seoane Faura trabajaba como Ingeniero de Planificación II para la Junta de Planificación de la Oficina del Gobernador y en 5 de mayo de 1955 iba para Arecibo en asuntos oficiales en cumplimiento de una orden que se le diera y conducía su automóvil. En el Km. 48 de la Carretera Estatal núm. 2 arrolló a José María Valentín causándole la muerte. El accidente se debió a la negligencia de Seoane quien iba a velocidad excesiva y no tomó otras precauciones, sin que estuviera autorizado a guiar vehículos de motor, y a la negligencia concurrente del conductor de un camión que

le precedía y al que Seoane quiso pasar al arrollar a Valentín. (¹)

■ Demandaron la viuda y 19 hijos, 14 mayores de edad y 5 menores de edad. La viuda y los menores dependían del interfecto para su subsistencia y sufrieron daños patrimoniales por la pérdida de los alimentos que les proporcionaba el finado y además daños morales. En cuanto a los mayores de edad, concluyó la Sala que sufrieron daños patrimoniales consistentes en poder heredar al finado en el capital que dejara a su fallecimiento natural, (²) y daños morales.

La Sala concluyó como cuestión de derecho que había negligencia; que la Ley 104 de 29 de junio de 1955 limitó las acciones de daños contra el Estado a una responsabilidad máxima de $15,000 y que el Estado respondía a los demandantes en la suma máxima de $15,000 para todos. En virtud de dichas conclusiones dictó sentencia condenando al Estado Libre Asociado a pagar a los demandantes la referida cantidad que procedió a dividir entre la viuda y los 19 hijos en la proporción de $5,000 para la viuda y $10,000 a repartirse entre los 19 hijos mayores y menores de edad que debemos presumir era por partes iguales en ausencia de otra disposición. Declaró sin lugar la acción en cuanto al codemandado Manuel Seoane Faura por el fundamento de que si bien actuó con negligencia lo hacía como empleado y agente del Estado Libre Asociado de Puerto Rico en gestiones de su cargo. La sentencia se dictó *sin costas* ni honorarios de abogado.

En 26 de julio de 1955 los demandantes interpusieron una demanda de daños contra Manuel Seoane Faura y el

---

(¹) Ni el conductor de este camión ni su dueño o persona alguna relacionada con el mismo fueron traídos al pleito como partes codemandadas o como terceros demandados. Esta conclusión de negligencia concurrente no surte efecto legal alguno en la disposición del caso.

(²) Este concepto de daño patrimonial es improcedente por obviamente especulativo. Cuando ocurriera su muerte natural la víctima podía tener acrecentados sus bienes, si los tenía, o podía no haber herencia alguna.

Estado Libre Asociado de Puerto Rico, codemandados, caso núm. 55-786. En virtud de moción para desestimar, el 1ro. de noviembre de 1955 se dictó sentencia final declarando sin lugar la demanda en cuanto al Estado. El caso continuó en cuanto al codemandado Seoane.

En 23 de mayo de 1956 se radicó el caso núm. 56-536 contra el Estado Libre Asociado de Puerto Rico por los mismos hechos. Este segundo caso se interpuso en virtud de la Resolución Conjunta núm. 21 de 26 de abril de 1956 que dispuso lo siguiente:

"Artículo 1.—Se autoriza a la Sucesión de José María Valentín y a su viuda Petrona Morales Viuda de Valentín, para que ante el Tribunal con jurisdicción interpongan acción civil contra el Estado Libre Asociado de Puerto Rico, para recuperar el valor de los daños y perjuicios que alegan han sufrido con motivo de un supuesto accidente automovilístico ocurrido el día 5 de mayo de 1955, por el kilómetro 48 de la Carretera Estatal Número Dos en el que se le imputa a Manuel Seoane Faura, Ingeniero de Planificación de la Oficina del Gobernador del Estado Libre Asociado de Puerto Rico, alegadamente arrolló y causó la muerte de José María Valentín.

Artículo 2.—Expresamente se autoriza a la Sucesión de José María Valentín y a Petrona Morales Viuda de Valentín a demandar al Estado Libre Asociado de Puerto Rico ante la Sala con jurisdicción del Tribunal de Primera Instancia de Puerto Rico por los alegados daños y perjuicios ocasionádoles por la acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona mientras actuaba en su capacidad oficial y dentro del marco de su función, cargo o empleo, mediando culpa o negligencia."

Solicitada la desestimación de la demanda por el Estado Libre Asociado la Sala la desestimó sólo en cuanto a una reclamación en exceso de $15,000.

Ambas partes apelaron la sentencia dictada en los méritos del caso. El Estado Libre Asociado imputa: (1) que la Sala sentenciadora cometió error de derecho al negarse a desestimar la demanda; y (2) grave error de hecho y de derecho

al apreciar la evidencia sobre negligencia y el efecto legal de la misma.

Los demandantes imputan a la Sala error: (1) al declarar sin lugar la demanda en cuanto al codemandado Manuel Seoane; (2) al limitar la responsabilidad del Estado Libre Asociado para con todos los demandantes a $15,000; (3) al concederle a la viuda $5,000 en pago de todos los daños sufridos por ella; y (4) al conceder a los otros 19 demandantes la cantidad de $10,000 como resarcimiento de los daños sufridos por todos ellos.

—I—

La Sala sentenciadora estuvo en lo correcto al negarse a desestimar esta segunda demanda contra el Estado Libre Asociado. Arguye el Gobierno que al ocurrir el accidente no existía causa de acción puesto que el Estado no actuaba a través de un agente especial, y que la Resolución Conjunta no concedía tal causa de acción. Que la Ley 104 de 1955 era de aplicación sólo en casos en que la causa de acción hubiera surgido con posterioridad a su vigencia.

Es cierto que en 5 de mayo de 1955, al ocurrir el accidente, no se había enmendado aún el artículo 1803 del Código Civil eliminando el requisito del agente especial para que el Pueblo fuera responsable, disponiendo, como dispone ahora dicho artículo, que el Pueblo responde en este concepto como un ciudadano particular. Ese requisito quedó eliminado con la aprobación de la Ley 104 de 29 de junio de 1955 efectiva en dicha fecha. Existen, cuando menos, tres razones por las cuales no tiene razón el Estado Libre Asociado en este planteamiento. En primer lugar, la Resolución Conjunta transcrita no se limita a autorizar el pleito como otras anteriores, Cf: *Campis* v. *Pueblo*, 67 D.P.R. 393; *M. Grau e Hijos* v. *Pueblo*, 51 D.P.R. 13, sino que expresamente dispuso que se autorizaba la demanda por los alegados daños causados por la acción u omisión del funcionario, agente o empleado del Estado mientras actuaba en su capacidad oficial y dentro del marco de

su función, cargo o empleo, mediando culpa o negligencia, Cf: *Rodríguez* v. *Pueblo*, 75 D.P.R. 401; *Irizarry* v. *Pueblo*, 75 D.P.R. 786. Precisamente la característica clásica que distinguía la situación del agente especial del artículo 1803 era que no se actuaba dentro del marco de la función, cargo o empleo, realizando gestiones ordinarias del cargo. Cf: *Acevedo* v. *Pueblo*, 69 D.P.R. 434; *Peña* v. *Pueblo*, 68 D.P.R. 942; *Rivera* v. *Pueblo*, 65 D.P.R. 983; *Soto* v. *Luchetti*, 58 D.P.R. 713.

En segundo lugar, cuando se aprobó dicha Resolución Conjunta en 26 de abril de 1956 ya la Asamblea Legislativa había adoptado desde el 29 de junio de 1955 una nueva política pública en el sentido de que no se requería la actuación de un agente especial, de modo que la Resolución Conjunta de hecho siguió, para este caso en particular, una política pública ya implantada en general para todos.

En tercer lugar, por la Ley 30 de 11 de junio de 1957 efectiva en esa fecha, antes de que la Sala sentenciadora dictara sentencia final en 17 de enero de 1958, se dispuso que la Ley 104 de 1955 sería aplicable a hechos ocurridos entre el 29 de junio de 1954 y el 28 de junio de 1955, o sea dentro del año inmediatamente anterior a la vigencia de la referida Ley 104. Habiendo ocurrido los hechos de este caso en 5 de mayo de 1955 quedaron cubiertos por las disposiciones de la Ley 104, siendo una de esas disposiciones—Art. 10—la eliminación del requisito del agente especial del artículo 1803 para que el Estado responda. Por otra parte la propia Ley 30 de 1957 dispuso que los procedimientos judiciales basados en hechos ocurridos entre el 29 de junio de 1954 y el 28 de junio de 1955 incoados ya en 11 de junio de 1957 al regir dicha ley continuarían tramitándose hasta su terminación de acuerdo con la legislación vigente a la fecha de su radicación. Este pleito se radicó el 23 de mayo de 1956, así la ley vigente a los efectos de la anterior cláusula de reserva era la 104 de 1955.

■ Tanto a la luz del propio texto de la Resolución Conjunta Núm. 21 como por estas otras razones, existía causa de acción en contra del Estado Libre Asociado aunque éste no hubiera actuado a través de un agente especial.

■ La otra contención del Gobierno al efecto de que el Estado no responde, a tenor del artículo 6(d) de la Ley 104, porque el acto de su empleado constituyó un delito público, el de homicidio involuntario, no se sostiene de acuerdo con lo decidido en *Meléndez* v. *ELA*, 81 D.P.R. 824. En torno a este problema cabe observar que históricamente de acuerdo con nuestras decisiones, la responsabilidad *Aquiliana* del Estado siempre se hizo descansar substantivamente en los Artículos 1802 y 1803 del Código Civil, y no en la Ley 76 de 1916 ni en las demás leyes autorizando a demandar al Estado. Sostuvimos que esas leyes, y dichos artículos, debían interpretarse conjuntamente y de manera complementaria. La Ley 104 lejos de derogar o desvirtuar tales artículos, en su propio cuerpo mantuvo la vigencia de los mismos, eliminando ahora el requisito del agente especial. La responsabilidad *Aquiliana* del Estado por negligencia del empleado no se desvanece por el hecho de que tal negligencia resulte también penada por ley, bajo una interpretación de conjunto y no trunca, de dicha Ley 104.

■ El segundo error del Gobierno tampoco procede. La prueba en el récord sostiene las conclusiones de hecho de la Sala sentenciadora en cuanto a la culpa y negligencia. Arguye el Estado que no autorizó a su empleado a usar su propio vehículo en dicha gestión. Hemos dejado bien sentado el principio en nuestra jurisprudencia que el punto decisivo es si el empleado actuaba o no en interés de su patrono o empresario y para beneficio de éste. En este caso la Junta de Planificación le ordenó la gestión oficial y no le proveyó transportación, ni tampoco le dispuso el medio que debía usar. Seoane declaró que ni se le autorizaba ni se le prohibía usar su vehículo; que quedaba a su libre albedrío. En esas cir-

cunstancias el Estado asumió el riesgo de la forma en que su empleado optó por transportarse a Arecibo.

## —II—

■ Veamos los errores levantados por los demandantes. El primero fue que la Sala sentenciadora erró al declarar sin lugar la demanda en cuanto a Seoane. De ordinario, la persona que causa el daño siempre es responsable bajo el Artículo 1802 del Código Civil, independientemente de que por él responda su patrono o empresario. Sobre la responsabilidad del que directamente causa daño—Artículo 1802—no hay problema en la doctrina. Tan es así que el Artículo 1804 dispone que el que paga el daño causado por sus dependientes puede repetir de éstos lo que hubiere satisfecho.

■ Pero la situación de este caso se rige por disposiciones especiales. La propia Ley 104 estatuye que la sentencia que se dicte en cualquier acción autorizada por dicha ley impedirá toda otra acción por parte del reclamante, por razón de la misma cuestión o materia, contra el funcionario, agente o empleado cuyo acto u omisión dio lugar a la acción; y la sentencia contra el funcionario, agente o empleado impedirá igualmente toda acción contra el Estado.([3])

----

([3]) Con respecto a la ley federal de Reclamación de Daños que sirvió de patrón a la nuestra, 28 USCA § 1346(b), se dispone en la Sección 2676 que trata del procedimiento, que una sentencia bajo la sección 1346(b) constituye un impedimento absoluto a una acción por el reclamante, contra el empleado del gobierno cuyo acto u omisión dio lugar a la reclamación, por razón de los mismos hechos. Cf: *Chagnon* v. *Griffiths* Jr. (D.C. Mass, Aldrich), 17 F.R.D. 222; *Uarte* v. *United States* (D.C. Cal.) 7 F.R.D. 705; *Sappington* v. *Prencipe* (D.C. D.C.), 87 F. Supp. 357; *Sullivan* v. *United States* (D.C. Ill.), 120 F. Supp. 217; *United States* v. *First Sec. Bank of Utah* (C.A. 10), 208 F.2d. 424 y Nota en 42 A.L.R.2d 960. Cf: *United States* v. *Gilman*, 347 U.S. 507. En este caso el Gobierno trató de repetir contra el empleado lo cual rechazó el Tribunal Supremo por consideraciones de norma y de las relaciones entre ellos, y reafirma que la ley no toca la responsabilidad del empleado excepto para disponer que una sentencia contra los Estados Unidos es un impedimento absoluto a una acción del reclamante contra el empleado. Los casos citados indican que bajo esa legislación no procede que al empleado y al Gobierno se les demande en la misma acción como codemandados.

En este caso existían dos acciones separadas que a los efectos del juicio se vieron conjuntamente con la misma prueba. Habiendo concluido la Sala sentenciadora que Seoane actuaba como empleado y agente del Estado Libre Asociado al causar el daño, y habiendo dictado sentencia contra éste, no cometió error al declarar sin lugar la demanda del caso 55-786 seguido contra el empleado.

■ El segundo señalamiento de error de los demandantes se refiere a la limitación del importe de los daños. Sostienen que no había limitación alguna porque su caso se rige por la Resolución Conjunta núm. 21 y ésta no contenía tal limitación. En las circunstancias en que se aprobó la referida Resolución Conjunta, no tienen razón los demandantes. La Ley 104 de 1955, que ya estaba en vigor, había dispuesto una norma legislativa en cuanto a tal límite, y para demandar por cantidad mayor o para pagar el exceso de una sentencia sobre dicho límite, sería necesario obtener autorización legislativa *específica*. Ante tal disposición, que envuelve una política pública general, no podemos interpretar la Resolución Conjunta adoptada posteriormente como que permitía demandar sin límite alguno porque silenciara el hecho, o porque autorizaba "recuperar el valor" de los daños. Mientras subsista la Ley 104 estos actos legislativos particulares deberán exonerar de manera *expresa* del requisito del límite generalmente fijado para que así lo entendamos. De hecho la Resolución Conjunta sólo anticipó, para este caso en particular, lo que luego se hizo en general por la Ley 30 de 1957. Véase Informe de la Comisión Jurídica de la Cámara a la R. C. núm. 21 (C. 2746), *Diario de Sesiones*, Vol. VIII núm. 27, pág. 161.

■ Sí tienen razón los apelantes en lo que se refiere a la interpretación que la Sala sentenciadora dio a la disposición de la ley relativa al límite de $15,000. Está firmemente decidido en nuestra jurisprudencia que la causa de acción de las personas que demandan por razón de la muerte de otra mediando la culpa o negligencia del Artículo 1802 es una

122

causa de acción directamente de ellas contra el causante del daño, y no una causa de acción que heredan de la víctima como parte de la herencia. Véase *Correa* v. *Autoridad de las Fuentes Fluviales*, 83 D.P.R. 144, (1961) y la recopilación allí hecha de nuestra jurisprudencia y de la doctrina. Cada reclamante en tal caso tiene una causa de acción suya propia, independiente de la de los demás, por aquellos daños que él logre probar que se le han causado o que ha sufrido. Siendo ese el principio de derecho que regía, la disposición de la Ley 104 autorizando a demandar en "[A]cciones de daños y perjuicios *a la persona* o a la propiedad *hasta* la suma de $15,000 causados por . . . etc." se refiere a los daños sufridos por un demandante, y no a un accidente, transacción o evento.(⁴) Es incuestionable que en este caso no todos los hijos estaban en idéntica situación en cuanto a sufrir daños, ni sufrían los mismos daños.

 Dispuesto lo anterior, conviene observar que en las acciones bajo este estatuto los Jueces Superiores deben determinar la cuantía de daños que resulte de acuerdo con la

---

(⁴) El lenguaje expreso del estatuto es claro en este sentido. Nada hay en el historial legislativo de la Ley 104 que indique lo contrario. La Ley Federal no contiene límite, como no lo contenía nuestra legislación anterior. El Gobierno en sus alegatos no nos ofrece ilustración sobre este planteamiento, sin embargo, en el historial legislativo del Proyecto de la Cámara 133 de 1957 que quiso enmendar la Ley 104 para eliminar el límite de $15,000 y el cual no llegó a convertirse en ley, hay una comunicación del Secretario de Justicia de 24 de febrero de 1958 en donde, habiéndosele pedido su opinión sobre la conveniencia de aumentar el límite a $100,000 en lugar de eliminarlo, el Secretario de Justicia expresó entre otras consideraciones, lo siguiente: "Como un ejemplo del peligro que entraña para la economía del Gobierno elevar dicho límite máximo, deseo comunicarle que tenemos en la actualidad pendiente ante los tribunales una reclamación de una viuda y 19 hijos, cuya reclamación *a base de los límites actuales* pudiera haber montado a $300,000. Tal y como está la jurisprudencia de nuestro Tribunal Supremo hoy día, en que pueden demandar hasta los hermanos que no dependan del fallecido considero altamente peligroso el alterar dicho límite máximo." Vemos ahí también una interpretación administrativa de la Ley 104 en sentido de que el límite fijado se aplica al resarcimiento de las personas que puedan haber sufrido daño y no a base de un solo evento o accidente.

prueba, aun cuando pudiere exceder de $15,000, y dictar sentencia sujeto al límite si fuere mayor. Debe ser así ya que la propia Ley 104 permite que se obtenga autorización legislativa específica para pagar *el exceso* de una sentencia sobre dicho límite. Por supuesto, como dijéramos en *Correa*, y repetimos, este menester de los Jueces debe estar presidido por un sano juicio y por criterios razonables y ponderados en la evaluación de cada caso, con objetividad de la realidad probada, de modo que siempre se conserve el sentido remediador del resarcimiento, que impone el artículo 1802 y el accidente no sea motivo de especulación o ganancia.

*Por los fundamentos anteriormente expuestos, la sentencia dictada por la Sala de Arecibo del Tribunal Superior será confirmada excepto en lo referente al límite de $15,000 que como cuestión de derecho fue fijado por todos los daños para todos los reclamantes, y se devuelve el caso para que se determine el resarcimiento que corresponda a cada demandante según la prueba, de manera compatible con lo aquí resuelto. La sentencia que se dicte deberá incluir las costas.*