TOMÁS MONTES, demandante y recurrente, *v.* FONDO DEL SEGURO DEL ESTADO DE PUERTO RICO y ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandados y recurridos.

*Número:* 381    *Resuelto:* 31 de enero de 1963

*Ángel Manuel Ciordia,* abogado del recurrente; *J. B. Fernández Badillo, Procurador General de Puerto Rico,* y *Juan A. Faría, Procurador General Auxiliar,* abogados de los recurridos.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Mientras trabajaba para su patrono, un obrero de 57 años, casado y gozando de buena salud sintió un fuerte dolor en la cintura, las caderas y los muslos, se desmayó y cayó al suelo. Referido al Fondo del Seguro del Estado, fue sometido a tratamiento de fisioterapia y dado de alta el 11 de agosto de 1953. El Fondo entendía que no necesitaba más tratamiento médico y que podía trabajar nuevamente. Apeló a la Comisión Industrial. Luego de exámenes clínicos y otros trámites correspondientes, mediante resolución del 30 de noviembre de 1954 la Comisión ordenó que el caso fuera referido nuevamente al Fondo " . . . para que se le practiquen nuevos estudios radiográficos y mielográficos para eliminar la posibilidad de una hernia de un disco intervertebral . . ."

El Fondo dispuso la hospitalización del demandante en su Centro Médico Quirúrgico con la siguiente instrucción:

"Se refiere al obrero del epígrafe para admisión y estudios neurológicos, radiográficos y mielográficos por el Dr. N. Rifkinson, según Orden de la Comisión Industrial. Diag: Contusión muslo derecho. Las radiografías fueron negativas de patología ósea."

Hospitalizado el 28 de diciembre de 1954, fue sometido a exámenes entre esa fecha y el 17 de febrero de 1955. El 19 de febrero de 1955 el Dr. Rifkinson rindió informe al Fondo del Seguro del Estado recomendando que fuera operado de una herniación múltiple del núcleo pulposo. El obrero regresó a su hogar mientras el Fondo decidía sobre la intervención quirúrgica.

El 24 de febrero el Fondo decidió que fuera operado y se ordenó su hospitalización para el 7 de marzo siguiente.

Fué operado el 15 de marzo de 1955. Le fueron removidos tres discos vertebrales de la región lumbar. Luego de la operación y aparentemente como resultado de ella sobrevino paraplejía. Carece de la facultad de locomoción y debe usar una silla de ruedas para moverse. Perdió su potencia sexual y tiene dificultad en evacuar y orinar, sufriendo de intensos dolores físicos al hacerlo. Requiere la ayuda de su esposa para todas sus necesidades y no le es posible dedicarse a labores útiles.

El Fondo así lo reconoció al determinar que el demandante sufrió, con carácter permanente, la "pérdida del ciento por ciento (100%) de sus funciones fisiológicas generales". El Fondo concedió $3,000.00, el máximo permisible.

Inició acción contra el Fondo y el Estado Libre Asociado reclamando daños y perjuicios. Alegó que la operación a que fue sometido fue efectuada sin su consentimiento ni su conocimiento; que fue practicada en forma negligente y que el médico que la realizó actuó como empleado del Fondo.

El tribunal sentenciador determinó que la prueba no demostraba negligencia alguna por parte del facultativo que practicó la operación al demandante. "Como cuestión de hecho", afirma el Tribunal, "el demandante no presentó evidencia de clase alguna que directamente o por razonable inferencia establezca hecho o acto alguno negligente del cirujano . . ." Pero determinó que al haber ordenado el Fondo la operación sin obtener el consentimiento previamente, había cometido una intervención ilegal en la persona del demandante. Por dicha actuación el demandante tenía derecho a reclamar a base de lo dispuesto en los Arts. 1802 y 1803 del Código Civil. El tribunal concedió $15,000 de indemnización más costas y sin honorarios, a tenor con lo dispuesto en el Art. 2 de la Ley Núm. 104 de junio 29 de 1955—32 L.P.R.A. sec. 3077(a) (Supl. 1961)—.

Solicitada la reconsideración, el tribunal sentenciador dictó una resolución y sentencia desestimando la demanda. Funda su fallo en lo dispuesto en el Art. 6(d) de la Ley Núm. 104 antes citada. Este artículo excluye de la ley que autoriza reclamaciones contra el Estado Libre Asociado, las "acciones por daños y perjuicios contra el Estado por acto u omisión de un funcionario, agente o empleado: (d) constitutivo de acometimiento, agresión u otro delito contra la persona. . ."

El tribunal estimó que la doctrina y la jurisprudencia establecen que una intervención quirúrgica efectuada sin el consentimiento de la persona constituye un acometimiento y agresión y por tanto, no procedía la reclamación contra el Estado. Acordamos revisar la sentencia.

■ Debemos consignar al comenzar a considerar este recurso que el recurrente no ha elevado la transcripción de evidencia, por lo que no estamos en condiciones de determinar si hubo o no negligencia por parte del médico que practicó la operación. El recurso se limita pues a determinar si con los hechos que el caso presenta existe responsabilidad por parte

del Estado al haber ordenado el Fondo la intervención quirúrgica sin el previo consentimiento del obrero.

En *Rojas* v. *Maldonado*, 68 D.P.R. 818 (1948) expresamos que "[s]e ha sostenido que el consentimiento del paciente es necesario para autorizar al cirujano a practicar una operación en el cuerpo de aquél y que una operación practicada sin tal consentimiento es un acto torticero e ilegal que hace responsable al cirujano por los daños causados al paciente". Expresamos además que "[a]l actuar sin la autorización. . . el demandado incurrió en culpa extracontractual o aquiliana, se hizo responsable de las consecuencias de sus actos y quedó legalmente obligado a reparar el daño causado".

Es generalmente aceptado el principio que establece el requisito del consentimiento para practicar una operación. *Dicenzo* v. *Berg*, 16 A.2d 15 (Pa. 1940); *Schmeztz* v. *Tracy*, 177 Atl. 520 (Conn. 1935); *McClees* v. *Cohen*, 148 Atl. 124 (Md. 1930); *Paulsen* v. *Gundersen*, 260 N.E. 448 (Wis. 1935); *Natanson* v. *Kline*, 350 P.2d 1093 (Kan. 1960); *Hundley* v. *St. Francis Hospital*, 327 P.2d 131 (Cal. 1958); *Physicians' & Dentists Business Bureau* v. *Dray*, 111 P.2d 568 (Wash. 1941); *Carroll* v. *Chapman*, 139 So.2d 61 (La. 1962); *Moore* v. *Webb*, 345 S.W.2d 239 (Mo. 1961); Wasmuth, C.E., *Consent to Surgical Procedures*, 6 Clev.-Mar. L. Rev. 235 (1957). En *Mohr* v. *Williams*, 104 N.W. 12 (Minn. 1905), la corte basó su decisión favorable a la demandante en "el derecho a la inviolabilidad de [su] persona (que) necesariamente prohiben al médico o cirujano, no importa cuán hábil o eminente. . . violar sin el consentimiento previo la integridad corporal de su paciente mediante una intervención quirúrgica mayor". Ver además *Rogers* v. *Lumbermens Mutual Casualty Company*, 119 So.2d 649 (La. 1960).

Se ha reconocido que en ciertas ocasiones no hace falta el consentimiento de la persona. Como en casos de emergencia en que no es práctico o resulta imposible obtener el consentimiento del paciente. En estos casos se sostiene que ha

habido consentimiento implícito. *Pratt* v. *Davis*, 79 N.E. 562 (Ill. 1906) ; *Mohr* v. *Williams*, supra; *Baxter* v. *Snow*, 2 P.2d 257 (Utah 1931) y Anotaciones en 139 A.L.R. 1370, 1371 (1942) y 56 A.L.R.2d 695 (1957). Quizá la mejor exposición de la ley relacionada con esta materia aparece en McCoid, *A Reappraisal of Liability for Unauthorized Medical Treatment*, 41 Minn. L. Rev. 381 (1957) a la pág. 392. Allí se dice:

"Todo individuo tiene el derecho a la inviolabilidad de su persona, que prohibe a un cirujano o a un doctor infringir la integridad corporal de su persona. Siempre que un médico o cirujano opera u ofrece tratamiento médico a un paciente, sin el consentimiento de éste, comete una agresión *prima facie*. Se admiten excepciones en circunstancias poco usuales donde resulta impráctico obtener el consentimiento del paciente y donde hay una grave amenaza a la vida o la salud del paciente que debe ser atendido de inmediato, ya prestando asistencia médica no autorizada, ya extendiendo el alcance de una operación autorizada para eliminar o contrarrestar una condición imprevista. El hecho de que la asistencia médica no autorizada no sea perjudicial, o sea de hecho beneficiosa al paciente, no excusa al médico. Y lo que es más, un tratamiento ajustado a las más altas normas de cirugía, o medicina en general y realizado en forma hábil y cuidadosa no constituye excusa para tal actuación."

■ La Ley de Compensaciones por Accidentes del Trabajo la Núm. 45 de 18 de abril de 1945—11 L.P.R.A. sec. 1 *et seq.* (ed. 1962), establece en su Art. 3 que:

"En cualquier caso con derecho a ser compensado, en que fuere necesaria una operación quirúrgica, el Administrador del Fondo del Seguro del Estado tendrá derecho a ordenar un examen médico, y si se demostrare de dicho examen que el obrero o empleado tiene alguna enfermedad crónica o que en cualquier otra forma está en condiciones físicas que ordinariamente pueda determinar que tal operación sea insegura, el obrero o empleado recibirá su compensación por inhabilidad bajo las condiciones generales de esta ley y aun cuando no se someta a tal operación. Si el examen no demuestra la existencia de enfermedad alguna o

condiciones físicas que revelen peligro alguno de esta operación y el obrero o empleado, con conocimiento de los resultados de dicho examen aún persiste en negarse a someterse a tal operación, solamente tendrá derecho a la mitad de la compensación que ordinariamente le corresponde bajo esta ley."

La disposición transcrita, como expresó el tribunal de instancia, "contempla el que, aún en el caso de un obrero sometido a la jurisdicción del Fondo del Seguro del Estado, el obrero sea consultado y se obtenga su consentimiento sobre cualquier intervención quirúrgica que sea necesaria en su persona. En el caso de una operación peligrosa tal circunstancia deberá hacerse conocer al obrero".

Ya habíamos dejado consignado que el Fondo no cumplió en este caso con dichos requisitos. El tribunal de instancia luego de hacer esta determinación le niega compensación en reconsideración, fundándose en que una intervención quirúrgica sin el consentimiento del paciente constituye acometimiento y agresión. Cita entre otros el caso de *Moss* v. *United States*, 225 F.2d 705 (8vo. cir. 1955) que así lo sostiene al considerar una demanda contra el gobierno de los Estados Unidos por una operación practicada en un veterano. Se niega la compensación fundándose en que la ley que autoriza demandas contra los Estados Unidos, "Federal Torts Claims Act", 28 U.S.C.A. 2680, exceptúa de responsabilidad por reclamaciones, "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights".

▮ Ahora la Ley Núm. 104 de 1955 al establecer la excepción equivalente, dispuso que no se autorizaban las acciones por daños y perjuicios por acto u omisión de un empleado "constitutivo de acometimiento, agresión u otro delito contra la persona . . ." dejando claramente establecido, como expresamos en *Báez Vega* v. *E.L.A.*, 87 D.P.R. 67 (1963), que " . . . . para que la inmunidad del Estado

no subsista bajo la excepción del inciso (d) del Art. 6 de la referida Ley Núm. 104 de 1955, el daño debe provenir de actos negligentes de un empleado que no constituyan determinados delitos en que la intención es un elemento esencial". En otras palabras, el consentimiento que dió el Estado para ser demandado en daños y perjuicios por la acción u omisión de cualquier funcionario, agente o empleado está condicionado a que tal acto no constituya delito en que la intención es un elemento esencial. Al mismo efecto: *Meléndez v. E.L.A.*, 81 D.P.R. 824 (1960) donde expresamos: "Mas bien lo que quiso hacer [se refiere a la disposición que consideramos] fué conservar la inmunidad del Estado contra litigios originados por aquellos actos torticeros cometidos deliberada o intencionalmente por sus funcionarios, agentes o empleados". Véase además, *Vda. de Valentín v. E.L.A.*, 84 D.P.R. 112 (1961). Y practicar una intervención quirúrgica en una persona sin su consentimiento, si bien técnicamente puede considerarse como un acometimiento y agresión, no constituye el delito de acometimiento y agresión castigable por nuestro Código Penal por carecer del elemento esencial de la intención. Código Penal, 33 L.P.R.A. sec. 821; *Báez Vega v. E.L.A.*, supra; Cfr. *Dobbins v. Hato Rey Psychiatric Hospital*, 87 D.P.R. 30 (1962).

■ Al considerar la responsabilidad del Estado en aquellos casos en que que se le demanda al amparo de la Ley Núm. 104 de 1955, se debe tener presente la admonición del Juez Asociado señor Harlan, cuando lo era del Tribunal de Apelaciones para el Segundo Circuto, en el caso de *Panella v. United States*, 216 F.2d 622 (2do. Cir. 1954). Se expresó así:

"Al interpretar el lenguaje de la Ley, [se refiere al Federal Torts Claims Act] debemos, por un lado, dar toda la extensión a la renuncia que hace el Gobierno de su tradicional inmunidad, y por el otro lado, evitar limitar aquellas disposiciones que establecen situaciones en las cuales el Congreso ha estimado conveniente retener dicha inmunidad... debemos desligarnos de cualquier regla de interpretación 'estricta' o 'liberal'."

Es interesante apuntar que se ha sostenido que aun bajo las disposiciones del *Federal Torts Claims Act*, lo que verdaderamente se intentó exceptuar de la renuncia de inmunidad por parte del soberano fueron aquellos "actos torticeros intencionales y maliciosos" esto es, *"deliberate torts"*. Gottlieb, *The Federal Torts Claims Act, A Statutory Interpretation*, 35 Geo. L.J. 1–49–50 (1946) ; Comentario, 38 Minn. L. Rev. 890 (1954) ; Nota, 41 Oregon L. Rev. 78 (1961), donde se critica el caso de *Moss*. Cfr. *Tastor* v. *United States*, 124 F. Supp. 548 (D.C. Cal. 1954) ; *Cerri* v. *United States*, 80 F. Supp. 831 (D.C. Cal. 1948). En el caso de *Panella* v. *United States*, supra, se dijo:

"En el 77mo. Congreso, el representante del Departamento de Justicia deponiendo a favor del proyecto sometió un memorandum en el que se incluía lo siguiente : 'Las otras excepciones en la Sección 402 se refieren a *ciertas actividades gubernamentales* que deben quedar libres de demandas por daños o para las cuales ya existe un remedio adecuado. Las excepciones incluyen reclamaciones que surjan de la pérdida o mal manejo de materia postal, de la imposición o recaudación de impuestos o derechos, de actividades militares o navales en tiempo de guerra, de la detención de bienes por oficiales aduanales, *actos torticeros intencionales tales como acometimiento y agresión*, y algunas otras. Las reclamaciones exceptuadas, para las cuales ya había provisto la ley, son aquellas por actos torticeros marítimos o bajo almirantazgo, reclamaciones hechas bajo la Ley Federal de Compensaciones a Empleados, y otras similares'. (Enfasis suplido.) Véase Vista sobre H.R. 5373 y H.R. 6463, 77mo. Congreso 2da. Sesión, pág. 28. Y durante el curso de la Vista, se le interrogó como sigue : 'Mr. Robsion : ¿En ese punto de acometimiento intencional, eso es cuando *algún agente* del Gobierno tiene una pelea con otro individuo? Mr. Shea : Sí. Mr. Robsion : ¿Y lo golpea? Mr. Shea : Eso es correcto.' (Enfasis suplido.) Véase Vistas sobre H.R. 5373 y H.R. 6463, 77mo. Congreso, 2da. Sesión, pág. 33.

"El 79no. Congreso, que finalmente promulgó la ley, no llevó a cabo vistas sobre el proyecto. Pero los informes del comité recomendado la promulgación incorporaron el lenguaje del memorandum del Departamento de Justicia al cual nos hemos re-

ferido.    Véase H.R. Rep. 1287, 79no. Congreso, 1ra. Sesión, pág.
6; S. Rep. 1400, 79no. Congreso, 2da. Sesión, pág. 33."

El hecho de que el obrero haya sido compensado por
el Fondo en forma alguna derrota su derecho a que se le
indemnice por la intervención quirúrgica que se le practicó
sin su consentimiento.    La exclusividad del remedio provisto
por la Ley de Compensaciones por Accidentes del Trabajo, es
por la lesión sufrida en el trabajo; y a ese efecto se dispone
que "el derecho . . . establecido para obtener compensación
será el único remedio en contra del patrono . . ."    Art. 20
—11 L.P.R.A. sec. 21 (ed. 1952)—*Onna* v. *The Texas Co.*,
64 D.P.R. 520 (1945), mientras que la acción ejercitada en el
presente caso se origina en la actuación del Fondo en someter
al recurrente a una operación sin su consentimiento.

Establecido que debe prosperar la acción incoada, sólo
nos resta determinar la cuantía de los daños.    El tribunal
de instancia cuando emitió su primer fallo concedió $15,000.00
de indemnización y fue luego en reconsideración, por enten-
der que no cabía responsabilidad por parte del Estado que
declaró sin lugar la demanda.    *Procede revocar la sentencia
recurrida, declarar con lugar la demanda y conceder
$15,000.00 de indemnización más las costas.*