Escribano Medina, Juez Ponente
*936 TEXTO COMPLETO DE LA SENTENCIA
El Procurador General, en representación del Estado Libre Asociado de Puerto Rico, en adelante el E.L.A., nos solicita la revocación de la sentencia emitida el 2 de julio de 2001 por el Tribunal de Primera Instancia, Sala Superior de Caguas (Hon. Velma I. González Rivera, J.), en adelante el Tribúnal. El Tribunal ordenó al E.L.A. que compensara a Francisco Flores Colón, Irma Nydia Escribano Cosme, por sí y en representación del menor Juan Carlos Flores Escribano, en adelante los recurridos, por los daños físicos y angustias mentales sufridos por el menor y las angustias mentales sufridas por los padres de éste.
í
Durante el mediodía del 1ro de septiembre de 1998, el menor Juan Carlos Flores Escribano se encontraba en un pasillo de la escuela Manuela Toro Morice de Caguas esperando que su novia Sara Sepulveda saliera de una reunión en la que se encontraba en uno de los salones de la escuela. Posteriormente, el codirector de la escuela, Sr. Angel Méndez y personal de la escuela comenzaron a despachar a los estudiantes para que desalojaran el edificio y los predios escolares, ya que la escuela se encontraba ante una situación de urgencia por motivo de una pelea estudiantil que requirió que los directivos del plantel escolar solicitaran la intervención de la Unidad de Operaciones Tácticas de la Policía de Puerto Rico (Fuerza de Choque). El E.L.A. indicó que la pelea entre las estudiantes fue controlada por el policía estatal Gilberto Zayas, quien fue objeto de insultos y a quien los demás estudiantes le lanzaban piedras, latas y botellas cuando el agente llevaba a la oficina del director a una de las estudiantes que había sido parte de la riña original. Para controlar el alegado motín, la escuela solicitó la asistencia de la Fuerza de Choque.
Juan Carlos Flores Escribano pudo observar que fuera de la escuela se encontraba una línea de efectivos de. la Fuerza de Choque. Transcurridos alrededor de cinco (5) minutos de su salida de la escuela, el menor recurrido y otros estudiantes procedieron a entrar nuevamente a los predios escolares al entender que la situación ya estaba bajo control.
Una vez dentro del plantel y de espaldas al lugar donde se encontraban los policías, el codemandante sintió que se había recrudecido la tensión existente y que los estudiantes cercanos a él comenzaron a apresurar sus pasos. El menor recurrido hizo lo mismo, pero fue alcanzado por un miembro de la Fuerza de Choque, quien *937 con su rotén le propinó un golpe en el brazo. El joven herido corrió hacia el interior de un edificio de la escuela y fue allí donde algunos maestros le prestaron los primeros auxilios pertinentes. Como el brazo se le hinchó y le salieron hematomas en el área golpeada, el menor fue acompañado por su hermano al Cuartel de la Policía en Caguas a los fines de radicar una querella criminal y luego se dirigieron a la Clínica del Turabo en Caguas para que la víctima se sometiera a radiografías y tratamiento médico. Allí le recetaron medicamentos para el dolor y le refirieron a un ortopeda, quien le enyesó el brazo por un período de tres (3) semanas.
Poco más de once (11) meses después, el 10 de agosto de 1999, el señor Francisco Flores Colón, la señora Irma Nydia Escribano Cosme, por sí y en representación del menor Juan Carlos Flores Escribano, radicaron una demanda de daños y pequicios al amparo de la Ley de Reclamaciones y Demandas contra el Estado, Ley 104 de 29 de junio de 1955, 32 L.P.R.A. sees. 3077 et seq., en adelante la Ley 104, bajo los Artículos 1802 y 1803 del Código Civil de Puerto Rico, 31 L.P.R.A. sees. 5141 y 5142, y bajo la Ley Federal de Derechos Civiles, 42 U.S. C. see. 1983. Como demandados, incluyeron al E.L.A., a la Policía de Puerto Rico y a su entonces Superintendente de la Policía, al Departamento de Educación y a su entonces Secretario, al codirector de la escuela Manuela Toro Morice, Angel Méndez y a otros codemandados de nombres desconocidos. Los recurridos reclamaron la compensación de los daños físicos y angustias mentales sufridos por ellos por la actos culposos o negligentes de los demandados, todo ello en violación de los derechos civiles de los reclamantes.
Luego de los trámites procesales de rigor, el 2 de julio de 2001, el Tribunal emitió una sentencia donde le ordenó al E.L.A. a compensarle al menor recurrido la suma de veinticinco mil ($25,000.00) dólares por los daños físicos sufridos y quince mil ($15,000.00) dólares por las angustias mentales y emocionales vividas por éste a raíz de los sucesos que motivaron la demanda y que lo marcaron sicológicamente. El Tribunal además estimó que el E.L.A. le debía satisfacer a cada uno de los padres la suma de cinco mil ($5,000.00) dólares por las angustias mentales sufridas al ver y vivir el sufrimiento de su hijo. El foro de instancia entendió que la parte demandada había incurrido en negligencia al iniciar y desatar injustificadamente una cadena de eventos que culminaron en los daños sufridos por el menor recurrido a manos de agentes del Estado. El Tribunal no creyó que el día de los hechos existiera en el plantel escolar una situación descontrolada que requiriera que la Fuerza de Choque entrara a la escuela a lograr que imperara el orden. Opinó el Tribunal que la presencia de la Fuerza de Choque en los predios escolares era mas bien una mecha incendiaria en un lugar donde se encontraban alrededor de dos mil (2,000) estudiantes.
Inconforme, el E.L.A. recurre de esta sentencia y nos hace los siguientes señalamientos de error:

"PRIMER ERROR: Erró el Tribunal de Primera Instancia al imponer responsabilidad al Estado Libre Asociado por la determinación de la escuela de llamar oficiales del orden público para atender una situación de riesgo en el plantel, cuando la escuela no fue negligente al así actuar, sino que cumplió con su deber de cuido de los estudiantes.

SEGUNDO ERROR: Erró el Tribunal de Primera Instancia al imponer responsabilidad al Estado Libre Asociado por las actuaciones intencionales del agente de la Policía que golpeó al menor demandante, cuando no se probaron actos negligentes separados que extiendan responsabilidad al Estado bajo Leyva et al. v. Aristud.
TERCER ERROR: Erró el Tribunal de Primera Instancia al conceder una compensación exageradamente alta de $25,000 por concepto de daño físico sufrido por el menor demandante, cuando el daño se limitó a un hematoma y una inmovilización breve del brazo."
Luego de examinadas las posiciones de las partes y el derecho aplicable, estamos en condición de resolver.
II
Debemos comenzar señalando que el artículo 1802 del Código Civil de Puerto Rico, supra, impone *938 responsabilidad al que causa daño a otro, ya sea mediante acción u omisión en la cual intervenga algún tipo de culpa o negligencia. La culpa o negligencia es la falta del debido cuidado, que a la vez consiste, esencialmente, en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. Ramos v. Carlo, 85 D.P.R. 353, 358 (1962). El concepto de culpa en nuestro ordenamiento jurídico es tan infinitamente amplio como la conducta de los seres humanos e incluye cualquier falta de una persona que produce un mal o daño. Colón v. Romero Barceló, 112 D.P.R. 572, 579 (1982). La necesidad de una convivencia social ordenada impone un deber general de corrección y prudencia en relación con los demás ciudadanos, y el acto es ilícito en sentido extracontractual cuando viola los deberes generales de corrección o conducta correcta, deberes que no están escritos en los códigos, pero que representan el presupuesto mínimo sobreentendido del orden de la vida social. Toro Aponte v. E.L.A., 142 D.P. R. 464, 473 (1997).
Ahora bien, es la Ley 104 la que establece las instancias en las que se puede demandar al Estado por los daños y perjuicios causados por sus agentes o empleados. Esta ley autorizó la presentación de demandas contra el Estado por las actuaciones culposas o negligentes de sus empleados, funcionarios o agentes en el desempeño de sus funciones y cuando actúan en su capacidad oficial. De conformidad con dicha ley, es necesaria la concurrencia de varios requisitos para encontrar al Estado incurso en responsabilidad por los daños y perjuicios causados por sus empleados, agentes o funcionarios, a saber: (1) que la persona que causó el daño era agente, funcionario o empleado del Estado y que estaba actuando en su capacidad oficial al momento de causarle el daño; (2) que el agente, funcionario o empleado, actuó dentro del marco de su función; (3) que la actuación del empleado fue negligente y no intencional; (4) que existe relación causal entre la conducta culposa y el daño producido. Leyva et al. v. Aristud et al., 132 D.P.R. 489, 510 (1993).
Cumplidos estos requisitos, el Estado está sujeto a responsabilidad en cualquiera de los siguientes supuestos: (1) cuando el empleado, agente o funcionario causa un daño por su exclusiva culpa o negligencia mientras desempeña sus funciones y actúa en su capacidad oficial; (2) cuando el empleado, agente o funcionario causa un daño mientras se desempeña en sus funciones y actúa en su capacidad oficial por una actuación preponderantemente negligente, aun cuando dicha conducta tenga algunos elementos intencionales; (3) cuando a. pesar de que el daño fue directamente producido por un acto enteramente intencional de los cuales no responde el Estado, hubo otros actos negligentes separados cocausantes del daño por los cuales sí debe responder el Estado; y (4) cuando el Estado, a través de sus agentes, es negligente por omisión al incumplir con un deber impuesto por las leyes y la Constitución. Id., a las págs. 510-511.
Sin embargo, de los artículos 2 y 6 de la Ley 104 y su jurisprudencia interpretativa se deriva que el consentimiento que prestó el Estado para ser demandado en daños y perjuicios por la acción u omisión de cualquier funcionario, agente o empleado, está condicionado a que tal acto no constituya delito en que la intención es un elemento esencial. Montes v. Fondo del Seguro del Estado, 87 D.P.R. 199, 206 (1963). Este estatuto requiere que se haga un análisis justiciero en los casos apropiados y que se distinga entre el delito intencional y la negligencia, puesto que de conformidad con este balance, el Estado responderá civilmente cuando el elemento de negligencia o descuido en la actuación dél agente supere cualquier grado de responsabilidad criminal en su conducta. Galarza Soto v. E.L.A., 109 D.P.R. 179, 182 (1979).
El agente del orden público que agredió al recurrido actuó de manera crasamente negligente, al no actuar según su deber dentro del marco de las funciones propias de su cargo, al golpear con su rotén a una persona que no representaba peligro para otros. La responsabilidad aquiliana del Estado por negligencia del empleado, no se desvanece por el hecho de que tal negligencia resulte también penada por ley, bajo una interpretación de conjunto y no trunca, de dicha Ley 104. Vda. De Valentín v. E.L.A., 84 D.P.R. 112, 119 (1961). En fin, la base de la responsabilidad no es la intención de lesionar al ciudadano al utilizar el rotén, sino la falta del debido cuidado al utilizarlo. Ya fuera por torpeza o falta de entrenamiento, el oficial de la Policía faltó al nivel de cuidado y rectitud que debía observar. Por lo tanto, entendemos que el segundo error planteado por el E.L.A. no fue cometido.
*939 Sin embargo, aun si entendiéramos que ese oficial actuó de manera intencional, la normativa expuesta en el caso de Negrón v. Orozco Rivera, 113 D.P.R. 712 (1983), nos guiaría al mismp resultado. En dicho caso se le impuso responsabilidad vicaria al Estado por la omisión negligente, separada y distinta de otros policías que debieron prever el daño y no tomaron las medidas cautelares pertinentes para evitarlo. Id. Ciertamente en este caso, otros policías se encontraban junto al oficial que le infligió las lesiones al recurrido. Estos pudieron haber evitado los daños de naturaleza previsible que efectivamente surgieron, por lo que la negligencia de los demás agentes de la Policía que allí se encontraban obliga al Estado a responder de manera vicaria por dichas omisiones.
III
Sabido es que el Estado tiene un interés fundamental en poner en vigor sus leyes penales y en combatir la criminalidad. Pueblo v. Martínez Torres, 120 D.P.R. 496 (1988). Nuestra Constitución, en las secciones 8 y 10 de la Carta de Derechos (Artículo II), 1 L.P.R.A., establece un límite a lo que puede hacer el Estado para imponer el orden sin violar el derecho de los ciudadanos a la intimidad, pero no prohíbe de manera absoluta la intromisión del Estado en la vida privada de una persona cuando sea necesaria como resultado de una investigación o procedimiento criminal. Pueblo v. Santiago Feliciano, 139 D.P.R. 361, 385 (1995). Del texto de las referidas secciones de nuestra Constitución, se desprende que no está prohibida la intromisión del Estado per se, sino la intromisión abusiva o irrazonable. Id.
Por otro lado, el artículo 3 de la Ley de la Policía de Puerto Rico, Ley Núm. 53 de 10 de junio de 1996, 25 L.P.R.A. see. 3102, establece los deberes generales de la Policía:
"Se crea en el Estado Libre Asociado de Puerto Rico un organismo civil de orden público que se denominará "Policía de Puerto Rico" y cuya obligación será proteger a las personas y a la propiedad, mantener y conservar el orden público, observar y procurar la más absoluta protección de los derechos civiles del ciudadano, prevenir, descubrir, investigar y perseguir el delito y, dentro de la esfera de sus atribuciones, compeler la obediencia a las leyes y ordenanzas municipales, y reglamentos que conforme a éstas se promulguen." (Enfasis Nuestro).
El Tribunal entendió que la escuela incurrió en negligencia al solicitar la asistencia de la Policía de Puerto Rico luego que se formulara una querella por consecuencia de una pelea entre estudiantes que se suscitó dentro del plantel escolar al mediodía. Indicó el Tribunal que el acto de solicitar la asistencia de la Fuerza de Choque era injustificado en ese caso en particular.
La política pública del E.L.A. ciertamente queda mejor servida cuando la Policía de Puerto Rico acude a un plantel escolar para apoyar al Departamento de Educación en su labor de proteger al estudiantado. La propia querella presentada por el recurrido indicaba que en la escuela hubo una pelea entre estudiantes, quienes luego se amotinaron creando una situación de peligro contra vidas y propiedades. Ante la gravedad de la situación era razonable que el personal de la escuela solicitara asistencia de la Policía. No puede perderse de vista que según le corresponde a las autoridades mantener un ambiente de paz en las escuelas, también los estudiantes deben proceder con una conducta respetuosa y ordenada. Por lo tanto, no procedía imponerle responsabilidad al E.L. A. fundamentando la responsabilidad en la actuación de los funcionarios de la escuela.
IV
La gestión judicial de estimación y valoración de daños es una difícil y angustiosa, ya que no existe un sistema mecánico que nos permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas. Blás Toledo v. Hospital Nuestra Sra. de la Guadalupe, 146 D.P.R._(1998), 98 J.T.S. 101; Rodríguez Cancel v. A.E.E., 116 D.P.R. 443, 451 (1985). El foro de instancia está en mejor posición de valorar los daños, por razón de su contacto directo con la prueba. Velázquez Ortiz v. U.P.R., 123 D.P.R. 234, 236 (1991). Los tribunales apelativos no intervendrán con la estimación de daños que hace el tribunal de instancia, a menos que las cuantías sean exageradamente altas o ridiculamente bajas. Rivera Rodríguez v. Tiendas Pitusa, Inc., 148 DPR_(1999), 99 J.T.S. 107. En dichos casos excepcionales, los foros apelativos *940 pueden intervenir con la adjudicación, por razón de que esta norma de abstención no es una absoluta. Sanabria v. E.L.A., 132 D.P.R. 769, 772 (1993).
Sin embargo, la persona que solicita la modificación de la cuantía de los daños tiene que demostrar la existencia de circunstancias que la justifiquen. Rodríguez Cancel v. A.E.E., supra. Esto se debe a que el objetivo jurídico que se persigue para fijar la cuantía de daños es que la suma fijada sea una razonablemente balanceada, que realmente compense los daños, sufridos dentro de unos parámetros razonables. Riley v. Rodríguez de Pacheco, 119 D.P.R. 762, 805 (1987).
Es una norma conocida que en la valorización de los daños se debe utilizar como punto de partida el valor que el Tribunal Supremo ha considerado adecuado en casos similares. Escobar Galarza v. Banuchi Pons, 114 D.P.R. 138, 148 (1983).
En este caso, el recurrido no sufrió fracturas, intervenciones quirúrgicas o daños físicos permanentes. Entendemos que la cuantía concedida al recurrido por los hematomas sufridos y la paralización temporera de su brazo, es una suma exagerada que debe ser modificada. Para lograr una decisión justa debemos tomar como marco de referencia la determinación que hiciera anteriormente el Tribunal Supremo en el caso Rivera Rivera v. Rivera Rodríguez, 98 D.P.R. 940 (1970). La víctima en dicho caso sufrió varias lesiones, entre éstas, una fractura simple en la muñeca izquierda, sufrió hematomas en el brazo, tuvo dicho brazo enyesado por más de seis semanas y fue sometido a una intervención quirúrgica para eliminar unos coágulos de sangre que se le alojaron en el brazo afectado. El Tribunal Supremo entendió que la suma de dos mil quinientos ($2,500.00) dólares como compensación por los daños recibidos por la víctima era una cuantía justa y razonable.
Tomando en consideración factores tales como los cambios en el poder adquisitivo del dólar, la jurisprudencia pertinente y la naturaleza de las lesiones sufridas, entendemos que la suma de dinero concedida al recurrido resulta ser excesiva y debe modificarse.
y
En atención a lo anteriormente expresado, se modifica la cuantía concedida a Juan Carlos Flores Escribano para reducirla de quince mil ($15,000.00) dólares a cinco mil ($5,000.00) dólares y así modificada se confirma la sentencia apelada.
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida I. Oquendo Graulau
Secretaria General