Josefa Meléndez, José M. Jiménez, Catalino Jiménez y Ernesta Jiménez, asistida de su esposo Daniel Santos, demandantes y recurridos, *v.* Estado Libre Asociado de Puerto Rico, demandado y recurrente.

Número 12521.

*Sometido:* 21 de marzo de 1960. *Resuelto:* 6 de junio de 1960.

Hon. Secretario de Justicia Hiram R. Cancio *(Francisco Espinosa, Jr., Secretario de Justicia Interino, Arturo Estrella, Secretario Auxiliar* y *Jorge Ruiz Rivera, Procurador Auxiliar,* en el alegato) y *Edgar S. Belaval, Jefe, División de Litigios Generales,* abogados del recurrente; *Lionel Fernández Méndez* y *Guillermo Cintrón Ayuso,* abogados de los recurridos.

El Juez Asociado Señor Pérez Pimentel emitió la opinión del Tribunal.

Catalino Jiménez Martínez falleció a consecuencia de las lesiones que recibiera al ser arrollado por un vehículo de motor *(pick-up)* el día 22 de julio de 1956 en la carretera estatal número 14, conocida entonces como "Desvío Temporero" del barrio Monte Llano de Cayey, Puerto Rico. El

indicado vehículo era propiedad del gobierno de los Estados Unidos de América y estaba asignado a la Guardia Nacional de Puerto Rico. En el momento del accidente el vehículo era conducido por un miembro de la Guardia Nacional de Puerto Rico en el desempeño de sus deberes y funciones como tal, habiendo ocurrido el referido accidente a causa de la negligencia de dicho conductor.

Acogiéndose a las disposiciones de la Ley núm. 104 de 29 de junio de 1955, los herederos de Jiménez Martínez demandaron al Estado Libre Asociado de Puerto Rico en reclamación de daños y perjuicios. El Tribunal Superior declaró con lugar la demanda y condenó al demandado a pagar a la viuda Josefa Meléndez la suma de $6,000 y $2,000 para cada uno de sus tres hijos, "José, Catalina (sic) y Ernestina Jiménez", sin imposición de costas ni honorarios de abogado.

La única cuestión que suscita el Estado Libre Asociado en este recurso es que no ha prestado su consentimiento para ser demandado por los hechos expuestos en la demanda.[1] Su posición es que dichos hechos constituyen un delito de homicidio involuntario y que el propósito claro de la Ley núm. 104 de 1955 es no hacer responsable al Estado por actos delictivos de sus funcionarios; que el homicidio involuntario es un delito contra la persona y que el art. 6 de la citada Ley núm. 104, no autoriza las acciones por daños y perjuicios contra el Estado por acto u omisión de un funcionario, agente o empleado constitutivo de delito contra la persona.[2]

[1] En la demanda se alega que el accidente "se debió única y exclusivamente a la negligencia, descuido o impericia del agente de la demandada y que en ese momento conducía el vehículo anteriormente descrito, a velocidad exagerada y estando mojado el pavimento, sin dar señal ni aviso de alarma de clase alguna y sin tomar las debidas precauciones para evitar el accidente que allí causó".

[2] Aparte de esta cuestión de derecho que fue desestimada por el tribunal sentenciador la controversia quedó reducida a la de negligencia y a la cuantía de los daños. El Estado Libre Asociado alegaba que el accidente se debió a la imprudencia temeraria de Jiménez Martínez al lanzarse inesperadamente frente al vehículo sin darle tiempo al conductor de éste para desviarse y evitar el accidente. La prueba fue contradic-

 Es tradicional la doctrina de que al Estado no puede demandársele sin su consentimiento. *Bonet* v. *Yabucoa Sugar Co.*, 306 U.S. 505; *Valiente & Cía.* v. *Cuevas*, 65 D.P.R. 181. Por la Ley núm. 76 de 13 de abril de 1916 El Pueblo de Puerto Rico otorgó su consentimiento para ser demandado en (1) acciones por daños y perjuicios basadas sobre contratos, y (2) acciones para reivindicar propiedad mueble e inmueble o derecho sobre la misma. Disponía dicha ley además que dichas acciones de daños y perjuicios y las de reivindicación de propiedad inmueble debían establecerse dentro de uno y dos años respectivamente, después de originada la causa de acción. Exigía también como requisito para el ejercicio de la acción que el demandante prestare una fianza por la suma de $500, excepto por razón de pobreza. Esta ley fue enmendada por la Ley núm. 11 de 18 de abril de 1928. La enmienda consistió en autorizar demandas contra El Pueblo de Puerto Rico en acciones por daños y perjuicios aunque no se basaran sobre contratos, y en aumentar la fianza a $2,000.

En 1955 la Legislatura aprobó la Ley núm. 104 de 29 de junio de ese año, conocida como la "Ley de Reclamaciones y Demandas Contra el Estado".

El art. 2 de dicha ley dispone lo siguiente:

"Artículo 2.—Se autoriza demandar al Estado Libre Asociado de Puerto Rico, ante el Tribunal de Primera Instancia de Puerto Rico por las siguientes causas:

"(a) Acciones por daños y perjuicios a la persona o a la propiedad hasta la suma de $15,000 causados por acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona actuando en capacidad oficial y dentro del marco de su función, cargo o empleo interviniendo culpa o negligencia.

---

toria pero el juez sentenciador dirimió el conflicto a favor de los demandantes. Resolvió además que los hechos probados no constituían el delito de homicidio involuntario pero que la preponderancia de la prueba establecía que el accidente fue causado por la negligencia del conductor del vehículo. Sobre este punto no insiste la recurrente quedando por resolver únicamente la cuestión de derecho que apuntamos arriba.

"(*b*) Acciones para reivindicar propiedad mueble e inmueble, o derechos sobre las mismas, con o sin resarcimiento de perjuicios por los daños causados en dicha propiedad, o por sus rentas y utilidades y para deslinde de fincas rústicas.

"(*c*) Acciones civiles en que la cuantía reclamada no exceda de $15,000 de principal, y que se funden en la Constitución, o en cualquier ley de Puerto Rico, o en cualquier reglamento de algún departamento o división del Estado, o en algún contrato expreso o tácito con el Estado." (Leyes de Puerto Rico de 1955, pág. 551).

En su art. 6 la ley establece varias excepciones a la autorización concedida para demandar al Estado Libre Asociado, entre las cuales figura la del apartado (*d*) que es la pertinente en este caso. Dicho artículo dispone:

"Artículo 6.—Nada en esta ley autoriza las acciones por daños y perjuicios contra el Estado por acto u omisión de un funcionario, agente o empleado:

"(*a*) . . . . . . . .

"(*b*) . . . . . . . .

"(*c*) . . . . . . . .

"(*d*) constitutivo de acometimiento, agresión u otro delito contra la persona, encarcelación ilegal, arresto ilegal, persecución maliciosa, calumnia, libelo, difamación y falsa representación e impostura;"

Se notará que la Ley núm. 104 es más amplia en lo que respecta a la renuncia de la inmunidad del Estado a ser demandado y responde, como veremos más adelante, al deseo de terminar con la indeseable situación de que la Legislatura tuviera que aprobar año tras año, leyes especiales autorizando demandas contra el Estado Libre Asociado.

Ya hemos dicho que la teoría del Estado es que como el homicidio involuntario está comprendido en el Código Penal entre los delitos contra la persona, dicho delito cae dentro de la excepción establecida en el inciso (*d*) arriba transcrito.

Creemos que no tiene razón. A nuestro juicio no fue la intención de la Legislatura, al aprobar el indicado inciso (*d*) mantener la inmunidad del Estado contra reclamaciones de

daños ocasionados por los actos descuidados y negligentes de
sus funcionarios, agentes o empleados. Más bien lo que quiso
hacer fue conservar la inmunidad del Estado contra litigios
originados por aquellos actos torticeros cometidos deliberada
o intencionalmente por sus funcionarios, agentes o empleados.
Y ya sabemos que el homicidio involuntario no es uno de
esos actos cuando como en este caso se causa la muerte "al
realizarse un acto legal que pudiere ocasionar muerte en
forma ilegal, o sin la debida prudencia o circunspección"; en
el supuesto, desde luego, que el empleado o agente del Estado
en este caso hubiere cometido dicho delito.(³) Véase art. 203
del Código Penal [33 L.P.R.A., sec. 635] y *Pueblo* v. *López*,
77 D.P.R. 607.

Arguye el Procurador General en su alegato que el pro-
pósito claro de la Ley núm. 104 es no hacer responsable al
Estado por actos delictivos de sus funcionarios y que esta
misma interpretación la han dado los tribunales federales a
la ley que autoriza demandas contra los Estados Unidos
de América conocida como "Federal Tort Claims Act" y de
la cual se copió sustancialmente nuestra ley.

Sin embargo, ni las decisiones que cita,(⁴) ni las au-

---

(³) El récord demuestra que el conductor del vehículo que arrolló y
causó la muerte a Catalino Jiménez Martínez, no fue procesado por el
delito de homicidio involuntario.

(⁴) Los casos citados por el Procurador General son los siguiente.·

(a) *Moos* v. *United States*, 225 F.2d 705.

En este caso se trata de una operación a un paciente en una ins-
titución del Estado sin consentimiento del paciente. Bajo la Ley de
Minnesotta estos actos constituyen el delito de acometimiento y agresión
grave. La letra expresa del *"Federal Tort Claims Act"* excluye respon-
sabilidad del Estado, resultante de un acometimiento y agresión.

(b) *United States* v. *Hambleton*, 185 F.2d 564.

Se reclamaron daños por actos constitutivos de acometimiento que
está expresamente excluido de la ley federal.

(c) *Wilcox* v. *United States*, 117 F. Supp. 119.

Se reclamaron daños resultantes de un acometimiento y agresión
a un paciente de una institución del Estado ocasionados por otro paciente.

(d) *Panella* v. *United States*, 216 F.2d 622.

También se reclamaron daños por la agresión cometida por un
paciente del hospital y no por un empleado. El caso fue devuelto al
tribunal inferior para que determinara si hubo negligencia (falta de vigi-

toridades que hemos consultado sostienen su contención. No hemos encontrado decisiones desestimando reclamaciones contra el gobierno, a base de la excepción de la ley federal que ahora nos interesa, cuando el daño proviene de actos negligentes y no intencionales de sus empleados. Por el contrario en algunos casos se ha condenado al gobierno a pagar daños y perjuicios como resultado de la muerte de una persona ocasionada por la negligencia del conductor (empleado del gobierno) en el manejo de un vehículo de motor. *Baker* v. *United States*, 159 F. Supp. 925; *Blackmon* v. *United States*, 130 F. Supp. 498; *Graun* v. *United States*, 78 F. Supp. 840. Véase además, *United States* v. *Kennedy*, 230 F.2d 674; *Purcell* v. *United States*, 130 Fed. Supp. 882. Así mismo las autoridades sostienen que la intención del Congreso fue preservar la inmunidad del Estado por aquellos actos cometidos deliberada o intencionalmente por sus funcionarios, agentes o empleados. Prosser *On Torts* (2d. ed.) pág. 773; *Tort Actions Against the Federal Government*, 47 Cal. L. Rev. 722; *Recent Cases*, 38 Minn. L. Rev. 890; Gillhorn & Lauer, *Federal Liability for Personal and Property Damages*, 29 N.Y.U.L. Rev. 1325; Hulen, *Suits on Tort Claims Against the United States*, 7 F.R.D. 689. Véase además, *Dalehite* v. *United States*, 346 U. S. 15, 97 L. ed. 1427.

---

lancia) por parte de los empleados del hospital. Se sostiene el mismo principio de que si la agresión la comete un empleado, el Estado no responde.

(e) *Stepp* v. *United States*, 207 F.2d 909.

En este caso se trataba de una reclamación basada en acometimiento y agresión al usarse fuerza excesiva al practicarse un arresto.

(f) *Morton* v. *United States*, 228 F.2d 431.

Se reclamaron daños por la indebida detención y atención médica inadecuada a un preso que padecía de sus facultades mentales. Se resolvió que se trataba del ejercicio impropio de las funciones discrecionales de un funcionario, o de hechos constitutivos de acometimiento, agresión, prisión o arresto ilegal, etc., que caían dentro de las excepciones del estatuto a la renuncia de inmunidad.

(g) *Tinkoff* v. *United States*, 211 F.2d 890.

Se reclamaron daños por arresto ilegal de una persona. Se desestimó la demanda por estar también excluido del estatuto.

Por otro lado el historial legislativo de la Ley núm. 104 de 1955 no demuestra que la Legislatura tuviera la intención, mediante la aprobación de dicha ley, de excluir de la renuncia de inmunidad, aquellos actos u omisiones de los funcionarios, agentes y empleados del gobierno, causantes de daños que a su vez constituyeran un delito, como el homicidio involuntario.

Cuando se informó el proyecto en la Cámara de Representantes, el Presidente de la Comisión de lo Jurídico de dicho cuerpo, se expresó como sigue:

"Sabido es por los compañeros que años tras años, en cada una de las sesiones legislativas, es necesario presentar legislación específica para autorizar a aquellas personas que por conducto de los compañeros solicitan autorización para demandar al Estado Libre Asociado. Esta legislación cubre esa situación y hace innecesario el que el legislador tenga que estar preocupado año tras año por aquellos casos que llegan a su conocimiento y que requieren la aprobación de legislación."

Volumen IV, Tomo III, pág. 1990 del Diario de Sesiones de la Asamblea Legislativa del Estado Libre Asociado de Puerto Rico.

Como bien sostienen los recurridos, el historial legislativo de los años anteriores al 1955 demuestra que siempre se permitía entablar demanda contra el Estado Libre Asociado por aquellos daños ocasionados por el manejo de vehículos de motor por agentes del Estado que ocasionaran lesiones o muerte, aunque al ocasionar la muerte el agente del Estado incurriera en la comisión de un delito de homicidio involuntario.([5]) Quedaría frustrado el verdadero propósito de la

---

([5]) Casos de muerte: Ley núm. 494 de 29 de abril de 1946; Ley núm. 336 de 16 de abril de 1946; Ley núm. 231 de 5 de mayo de 1950; Ley núm. 415 de 11 de mayo de 1951. Muerte por accidente de otra naturaleza: Ley núm. 192 de 2 de mayo de 1952. Otras leyes autorizando a demandar al Estado: Ley núm. 45 de 18 de abril de 1940; Ley núm. 342 de 10 de mayo de 1947; Ley núm. 20 de 13 de abril de 1948; Ley núm. 88 de 5 de mayo de 1948; Ley núm. 224 de 5 de mayo de 1950; Ley núm. 416 de 11 de mayo de 1951.

Ley 104, si resolviéramos que el Estado no ha renunciado su inmunidad para ser demandado cuando sus agentes, por descuido, negligencia o falta de circunspección en el manejo de un vehículo de motor ocasionen la muerte a una persona aunque tal hecho constituya en sí un delito de homicidio involuntario y surgiría nuevamente la situación indeseable de que los legisladores volvieran a estar preocupados año tras año, en la aprobación de legislación especial, que fue precisamente lo que la Ley núm. 104 quiso evitar, pues sabido es, y no encontramos razones para suponer lo contrario, que la Legislatura continuaría, como lo hizo hasta el año 1955, dando el consentimiento del Estado para ser demandado, cuando sus agentes causen lesiones o muerte, en el manejo de vehículos de motor. Por lo menos, no conocemos caso alguno en que antes de 1955 la Legislatura se negara a dar tal consentimiento. No creemos que la Legislatura tuvo la intención, al aprobar la Ley núm. 104, de dar el consentimiento del Estado para ser demandado si en el accidente de automóviles, ocasionado por la negligencia de sus agentes, una persona recibía lesiones serias pero no mortales, —que no es un delito contra la persona—y a su vez negar su consentimiento, cuando como consecuencia de esas lesiones, la persona muere, por la única razón de que los hechos cometidos por el agente del Estado constituyen en este último caso el delito de homicidio involuntario, que es un delito contra la persona.

*Por todas las razones expuestas resolvemos que no se cometió el error señalado por el recurrente y en su consecuencia debe confirmarse la sentencia objeto de revisión.*