# 98 DTA 224

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE PONCE Y AIBONITO**
**PANEL I**

AIREKO CONSTRUCTION CORP.
Demandante-Apelante

v.

MUNICIPIO AUTONOMO DE PONCE
Demandado-Apelado

Núm. KLAN-98-00478

San Juan, Puerto Rico, a 24 de agosto de 1998

Panel integrado por su Presidente, Juez Negrón Soto,
y los Jueces Aponte Jiménez y Segarra Olivero

Segarra Olivero, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Aireko Construction Corp. (Aireko) nos solicita la revocación de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, mediante la cual se declaró sin lugar la demanda sobre incumplimiento de contrato y reclamo de intereses por mora presentada por Aireko contra el Municipio Autónomo de Ponce (Municipio).

Por los fundamentos que exponemos más adelante, revocamos la sentencia apelada.

### I

Examinemos los hechos que dieron lugar a la presentación de este recurso.

El 19 de marzo de 1993 el Municipio celebró unas subastas para adjudicar la buena pro de dos proyectos de remodelación de estructuras deportivas en la ciudad de Ponce, a saber, la remodelación del Complejo Deportivo Acuático Vassallo y la remodelación del Complejo Deportivo Frankie Colón. Aireko compareció como licitador a las subastas de ambos proyectos, los cuales le fueron adjudicados por haber sido el postor más bajo. Ambos proyectos fueron concebidos con el objetivo de remodelar las facilidades deportivas para los Juegos Centroamericanos y del Caribe celebrados en la ciudad de Ponce, P.R. durante el mes de noviembre de 1993.

El Municipio preparó un Pliego de Condiciones Generales, el cual fue incorporado en el Manual de Especificaciones Generales, que formaba parte de los documentos de contratación que tenían que ser considerados por los licitadores de los proyectos subastados, incluyendo entre ellos a Aireko, quien finalmente obtuvo la buena pro en ambas subastas. El inciso 10(a) del Pliego de Condiciones Generales, en su parte pertinente, lee como sigue:

*"10. Payments to Contractor*

*(a) Partial payments will be made as the work progress on not later than thirty days after date of certification for work done during the preceeding period on estimates certified to by the Engineer, Contracting Officer and the Executive Director."*

Posteriormente, se otorgaron los contratos correspondientes. Ambos proyectos fueron completados a satisfacción del Municipio y de acuerdo con el contrato, los planos y las especificaciones. No obstante, aunque el Municipio pagó en su totalidad las certificaciones presentadas por Aireko, éste sostuvo que las mismas fueron pagadas de forma tardía, es decir, en exceso de los treinta (30) días luego de ser aprobadas. Aireko solicitó por escrito al Municipio el pago de los intereses por mora adeudados como consecuencia de los pagos que fueron hechos tardíamente. El Municipio se negó a satisfacer los mismos.

Así las cosas, el 1 de octubre de 1996 Aireko presentó una demanda contra el Municipio en la cual reclamó el pago de intereses por mora ascendentes a $46,958.17. Aireko adujo que en virtud de la cláusula 10(a) antes transcrita el Municipio venía obligado a efectuar los pagos parciales en un término de treinta (30) días luego de la fecha en la que se aprobaran las certificaciones y que, por tanto, el Municipio había incumplido los términos del contrato y, en su consecuencia, venía obligado a pagar los intereses por mora al amparo del Artículo 1061 del Código Civil, 31 L.P.R.A. sec. 3025.

El Municipio contestó la demanda y solicitó la desestimación de la misma alegando, en síntesis,

que no podía responsabilizarse a un municipio por el pago de intereses por mora en ausencia de pacto expreso e inequívoco o de disposición legal que lo autorizara; que las partes no acordaron el pago de dichos intereses; y que las disposiciones del Artículo 1061 del Código Civil, *supra*, no eran extensivas a casos en los que la parte obligada es un municipio.

Posteriormente, Aireko presentó Moción Solicitando Sentencia Sumaria Parcial en la cual reiteró su posición de que los municipios están obligados al pago de intereses por mora como cualquier contratante, conforme lo dispuesto en el Artículo 1061 del Código Civil, *supra*. Por su parte, el Municipio presentó su oposición y, a su vez, solicitó que se dictara sentencia sumaria a su favor arguyendo esencialmente que Aireko no había demostrado los daños sufridos, y que el Municipio estaba cobijado por la doctrina de la inmunidad gubernamental, por lo que no se le podía requerir el pago de intereses por mora a menos que éstos hubiesen sido específicamente pactados por las partes.

Luego, el 27 de agosto de 1997, Aireko presentó una réplica a la oposición presentada por el Municipio en la que añadió que la parte reclamante de los intereses por mora no tiene que probar daños, ya que sólo tiene que demostrar que hubo un atraso en el pago porque se incumplió con el término pactado para ello o porque hubo intimación del acreedor.

Trabada así la controversia entre las partes, el Tribunal de Primera Instancia, Sala Superior de Ponce, dictó la sentencia que nos ocupa mediante la cual desestimó la demanda presentada por Aireko. El tribunal apelado concluyó que en el contrato suscrito entre las partes no se pactó expresamente un término para pagar las certificaciones sometidas por Aireko ni se acordó el pago de intereses por mora. Además, resolvió que el Artículo 1061 del Código Civil, *supra*, no era de aplicación al caso de autos toda vez que los municipios no son responsables del pago de intereses por mora cuando no se han pactado expresamente ya que ello implicaría una erogación de fondos no presupuestados por el Municipio y *"atentaría no sólo contra la política pública sino que también contra los residentes en el municipio"*.

Inconforme con tal dictamen, Aireko acude ante nos y señala que erró el tribunal apelado al determinar que el contrato suscrito entre las partes no tenía cláusula alguna que autorizara el pago de intereses por mora y que un municipio no puede ser responsable de dicho pago.

## II

Primeramente examinaremos el error relacionado con los términos del contrato suscrito por las partes.

El Municipio señala que el Pliego de Condiciones Generales no contenía una cláusula, condición o lenguaje que lo obligara a pagar intereses por mora y que la cláusula 10(a) no es parte del contrato firmado por las partes.

A esos efectos, el foro apelado concluyó lo siguiente:

*"En el caso que nos ocupa, el pago se pactó a través de certificaciones mensuales. No obstante, eso se refiere a la forma de someter las facturas mediante trabajos realizados por Aireko. No surge que se contratase un límite de tiempo para el pago de parte del municipio tal como reclama el demandante. El que las facturas sean enviadas en base mensual no implica que tuvieran que pagarse necesariamente en treinta (30) días. Eso no se halla en el contrato suscrito."*

Por su parte, Aireko señala que de la cláusula 10(a) se desprende que las partes pactaron un término determinado para realizar los pagos. Entendemos que le asiste la razón a Aireko. No cabe duda que como parte del contrato suscrito entre el Municipio y Aireko se acordó que se cumplirían con los términos y condiciones expuestos en el Manual de Especificaciones Generales y en el Pliego de Condiciones Generales. Por tanto, resolvemos que la referida cláusula 10(a) es parte integral del contrato suscrito entre las partes. De dicha cláusula surge claramente que el Municipio se obligó a realizar los pagos no más tarde de los treinta días (30) siguientes a la fecha en que se entregaron las certificaciones debidamente aprobadas. Sabido es que cuando los términos de un contrato son claros, se estará al sentido literal de sus cláusulas. Art. 1233 del Código Civil, 31 L.P.R.A. sec. 3471.

Ahora bien, establecido lo anterior, nos corresponde determinar si el incumplimiento con los términos de pago pactados implica necesariamente que el Municipio incurrió en mora o si, por el contrario, era indispensable para aplicar las disposiciones del Artículo 1061 del Código Civil, *supra*, el que se hubiese dispuesto expresamente en el contrato que de no pagarse dentro de la fecha fijada el Municipio sería responsable de satisfacer los intereses por mora.

El Municipio señala que la referida cláusula 10(a) lo único que establece es un término de treinta (30) días para pagar pero que en la misma no se dispone expresamente el pago de intereses por mora en caso de incumplimiento y que, además, no procede la reclamación porque Aireko no hizo alegación específica respecto a los daños sufridos como consecuencia del alegado incumplimiento. Agrega que habida cuenta que el pago de intereses por mora no está expresamente pactado, no puede imponérsele a un municipio esa responsabilidad por la teoría de la inmunidad del soberano. No podemos avalar la posición presentada por el Municipio.

El Artículo 1053 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3017, establece que incurren en mora los obligados a entregar o hacer alguna cosa desde que el acreedor les exija judicial o extrajudicialmente el cumplimiento de su obligación. Dispone, además, que no será necesaria la intimación del acreedor para que la mora exista en los siguientes supuestos: (a) cuando la obligación o la ley así lo declaren expresamente; y (b) cuando de su naturaleza y circunstancias resulte que la designación de la época en que había de entregarse la cosa o hacerse el servicio, fue motivo determinante para establecer la obligación. El Artículo 1054 del Código Civil, 31 L.P.R.A. sec. 3108, preceptúa que *"[q]uedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren el tenor de aquéllas".*

Por su parte, el Artículo 1061 del Código Civil, 31 L.P.R.A. 3025, dispone como sigue:

*"Si la obligación consistiere en el pago de una cantidad de dinero y el deudor incurriere en mora, la indemnización de daños y perjuicios, no habiendo pacto en contrario, consistirá en el pago de los intereses convenidos, y a falta de convenio el interés legal.*

*Mientras que no se fije otro por el Gobierno, se considerará como legal el interés del seis por ciento al año".*

En todo caso para que el deudor incurra en mora es necesario que la obligación sea jurídicamente exigible, esté vencida y sea de posible cumplimiento por estar determinado su contenido. J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1988, T. I, Vol. II, a la pág. 416. Por su parte, el tratadista Manresa postula que los requisitos para que pueda imponerse el pago de intereses legales por mora son los siguientes:

*"1. Que la obligación tenga por objeto una cantidad de dinero.*

*2. Que se trate de una cantidad líquida.*

*3. Que el deudor haya incurrido en mora.*

*4. Que expresamente no se haya pactado otra cosa, bien sobre la obligación en sí de indemnizar, o sobre la cuantía de los intereses.*

*5. Que no haya una exculpación que el demandado justifique.*

*6. Que se pidan, junto a la reclamación del principal."*

Véase, J. Manresa, *Comentarios al Código Civil Español*, Madrid, Ed. Reus, 1967, T. VIII, Vol. I, págs. 307-307.

La cláusula contractual aludida anteriormente es meridianamente clara. Mediante ésta el Municipio se obligó a pagar no más tarde de los treinta (30) días de hechas las certificaciones. Según nuestro

ordenamiento legal vigente en materia de contratos, procede el pago de indemnización, es decir, de intereses, cuando una parte incurre en mora en la obligación de pago a la otra parte contratante pues es de aplicación lo dispuesto en el Artículo 1061, *supra*. De los requisitos antes transcritos se desprende que no es necesario que exista una disposición expresa de que en caso de incumplimiento se pagarán intereses por mora pues el Artículo 1061, *supra*, entra en vigor automáticamente. En la situación ante nos la obligación de pago del Municipio quedaba activada a los treinta (30) días luego de la aprobación de las certificaciones, porque así lo convinieron expresamente las partes. Transcurrido el término convenido, comenzaba automáticamente el efecto de la mora para el Municipio, sin que fuere necesaria la intimación del deudor. En el caso de autos se cumplen todos los requisitos necesarios para concluir que el deudor, el Municipio, ha incurrido en mora y le es aplicable el remedio provisto en el Artículo 1061, *supra*, a saber: (a) se trata de una deuda pecuniaria, líquida, exigible, que se estima vencida desde el momento en que expira el plazo establecido habida cuenta que no se pactó lo contrario; (b) el deudor no pagó dentro del término pactado; y (c) no tenía justificación alguna para ello. Si acogiéramos la interpretación que nos propone el Municipio, cabría preguntarse entonces: ¿Qué motivación tendría el Municipio para realizar los pagos a tiempo, si no existe mecanismo que lo obligue al cumplimiento? ¿Qué necesidad habría de insertar una cláusula que establezca un término específico para pagar si no puede imponerse responsabilidad alguna por su incumplimiento? Un contrato entre el gobierno y un particular debe interpretarse como si se tratara de un contrato entre dos personas particulares. *Rodríguez v. Municipio*, 75 D.P.R. 479 (1953).

El Municipio se obligó a realizar pagos parciales dentro de los treinta (30) días siguientes a la certificación. No obstante, muchos de los pagos no se hicieron en el término pactado. Como bien se establece en el Artículo 1061, *supra*, no habiendo pacto en contrario, la responsabilidad del deudor consistirá en el pago de los intereses por mora. En el caso que nos ocupa, puesto que las partes no pactaron indemnización alguna en la eventualidad de que el Municipio incurriere en mora en el cumplimiento de su obligación de pago, es forzoso concluir que el remedio del acreedor (Aireko) es reclamar la imposición del interés legal prevaleciente desde la fecha en que el Municipio incurrió en mora hasta que satisfizo la cantidad adeudada.

En cuanto a la contención del Municipio de que no procede la reclamación instada por Aireko toda vez que no probó los daños sufridos como consecuencia del incumplimiento, concluimos que la misma carece totalmente de mérito. Una vez se incumple la obligación establecida de efectuar el pago de una cantidad de dinero, la indemnización en daños y perjuicios consiste en el pago de los intereses. El Artículo 1061 del Código Civil, *supra*, no exige que se prueben los daños. La doctrina es clara al respecto. Los efectos de la mora del deudor en los casos en los que se adeude una cantidad de dinero consisten en el pago de los intereses convenidos o del interés legal. Por ello, es innecesario que se prueben los daños. Véase, Puig Brutau, *ibid*, a la pág. 419. A tales efectos, nos dice Manresa, refiriéndose a los Artículos 1.108 y 1.109 del Código Civil Español, equivalentes a nuestros Artículos 1061 y 1062, lo siguiente:

*"Como ya hemos indicado en los comentarios de los artículos anteriores, hay una causa de indemnización, la mora y una especie de obligaciones, las de entregar dinero, en que por la facilidad de apreciación, lo mismo en cuanto a la existencia de la causa que a la extensión de los perjuicios, constituye excepción dentro de las reglas generales de responsabilidad, no dando lugar a discusiones, puesto que la prueba es fácil, y no encontrando tampoco dificultades en los Tribunales, por lo mismo que la determinación y procedencia de la indemnización se halla establecida en la ley.*

*De lo dicho, bien claramente se advierte que el interés legal es el contenido de la apreciación, cuando el deudor incurre en mora y se trata de una obligación dineraria, mas si se pactó cuál habrá de ser la indemnización en el caso de incumplimiento lo concertado sustituye a la determinación legal".*

Manresa, *ibid*, a las págs. 296-297.

### III

Por otro lado, el Municipio alega que no le corresponde pagar intereses por mora pues está cobijado por la doctrina de la inmunidad soberana. Tampoco le asiste la razón.

La doctrina de la inmunidad soberana impide que se inste un procedimiento judicial contra el Estado en las cortes estatales, a menos que éste consienta a ello y postula, además, que el Estado no responde por los daños ocasionados por sus oficiales, agentes o empleados en el desempeño de sus funciones. *Defendini Collazo v. E.L.A.*, ___ D.P.R. ___ (1993), **93 J.T.S. 119.** ■

En el año 1916 se aprobó la primera ley que autorizó que se instaran demandas contra el Estado en casos de reivindicación de bienes y por los daños y perjuicios basados en contratos celebrados después del 1 de julio de 1916. Ley Núm. 76 de 13 de abril de 1916, Leyes de Puerto Rico, (1916), págs. 155-157. Posteriormente, la Ley Núm. 76 fue derogada y, en su lugar, se aprobó la Ley Núm. 104 de 29 de junio de 1955, conocida como la Ley de Pleitos contra el Estado. ■ La aprobación de esta ley constituyó una amplia renuncia a la protección de la inmunidad soberana por parte del Estado. Véase, *Meléndez v. E.L.A.*, 81 D.P.R. 824 (1960); *Defendini v. E.L.A., supra*, a la pág. 11003. En esta ley se impuso por primera vez un límite a las cuantías que se pueden obtener contra el estado y se dispuso expresamente que el Estado sería responsable por los daños ocasionados por sus empleados en el desempeño de sus funciones. *Id.*

La Ley de Pleitos Contra el Estado, *supra*, autoriza a demandar al Gobierno en las siguientes circunstancias: por los daños y perjuicios causados por actuaciones culposas o negligentes de sus agentes o empleados en el descargo de sus funciones oficiales hasta el límite dispuesto en el estatuto; en acciones para reivindicar propiedad mueble e inmueble; en acciones que se funden en la Constitución o en cualquier ley de Puerto Rico o reglamento de algún departamento o división del Estado; o que origine y tenga su base en algún contrato expreso o tácito con el Estado. 32 L.P.R.A. sec. 3077.

El Tribunal Supremo de Puerto Rico en *Romero Arroyo v. E.L.A.*, 127 D.P.R. 724, 744-745 (1991), expuso que en la actualidad la doctrina de la inmunidad del soberano *"sufre de una gran erosión"*. Señaló, además, que *"[l]as razones sobre las cuales descansa la inmunidad del soberano han sido objeto de mucho debate. Varían desde el axioma monárquico de The King can do no wrong, hasta la justificación económica de proteger los recursos monetarios del Estado."* En el caso de autos, la cláusula que origina la reclamación de Aireko proviene de un contrato. De esta manera el Gobierno renunció a su inmunidad y prestó su consentimiento para ser demandado. El Municipio se colocó en la misma posición que un individuo particular a los efectos de la responsabilidad por cualquier incumplimiento a los términos pactados. De no ser así nos encontraríamos ante una situación donde el Gobierno podría otorgar contratos e incumplirlos impunemente, despojando a la otra parte de un mecanismo legal para exigir el cumplimiento de tales obligaciones. En otras palabras, el cumplimiento de la obligación se dejaría al arbitrio absoluto de una sola de las partes. Véase, Artículo 1208 del Código Civil, 31 L.P R.A. sec. 3373.

Por otro lado, no existe disposición de ley alguna que exima al Municipio del pago de daños y perjuicios por incumplimiento de contrato. Los municipios son entidades políticas con capacidad para demandar y ser demandadas éstos como cualquiera otras entidades son responsables de sus contratos. Quien contrata con los municipios no tiene que acudir a un recurso especial, pues su acción nace del contrato o de su quebrantamiento. *Veve v. Municipio,* 43 D.P.R. 845 (1932). En Puerto Rico en ausencia de régimen especial, y salvo estatutos que modifiquen tal situación, los contratos administrativos se rigen por la teoría general de los contratos. *Plan de Bienestar de Salud v. Alcalde de Cabo Rojo*, 114 D.P.R. 697, 699 (1983).

Concluimos que en Puerto Rico, bajo el ámbito de la inmunidad gubernamental, no existe prohibición alguna para la imposición de intereses por mora a los municipios en caso de incumplimiento de obligaciones. Si existiera tal prohibición, la contratación entre cualquier entidad gubernamental y una parte privada sería desalentada, toda vez que el Estado y/o los municipios estarían facultados a incumplir sus obligaciones sin ser penalizados por ello. Como cuestión de hecho, nuestro Tribunal Supremo ha sido enfático al resolver que en los casos en los que se dicte sentencia en contra del Estado y/o sus municipios, agencias e instrumentalidades ordenándole el pago de una suma de dinero, la imposición de intereses al tipo legal sobre la cuantía de la sentencia procede como cuestión de ley y no es contraria a las leyes de inmunidad gubernamental. Véase, *Municipio de Mayaguez v. Rivera,* 113 D. P.R. 467 (1982); *Insurance Co. of P.R. v. Tribunal Superior,* 100 D.P.R. 405, 409 (1972); Regla 44.3(a) de Procedimiento Civil, 32 L.P.R.A. Ap. II, R. 44.

Cuando el legislador ha querido excluir al Estado o a los Municipios de la aplicación de alguna ley, lo ha hecho expresamente. Un ejemplo ilustrativo es la Regla 44.3 (b) de las de Procedimiento Civil, *supra*, la cual específicamente excluye al Estado, sus municipios, agencias, instrumentalidades o funcionarios en su carácter oficial, de la imposición de intereses por temeridad. El tribunal *a quo* utilizó erróneamente, por analogía, la Regla 44.3 (b) de las de Procedimiento Civil, *supra*, para fundamentar su conclusión de que el Estado y/o sus criaturas no deben pagar intereses por mora. Como ya vimos, esta disposición constituye una excepción y no una regla general.

Resolvemos, entonces, que ni el estado ni los municipios están cobijados por la doctrina de inmunidad soberana para fines de quedar excluidos de la aplicación del Art. 1061 del Código Civil de Puerto Rico, *supra*.

## IV

De todo lo anteriormente expuesto se colige que el Municipio Autónomo de Ponce responde, como cualquier otro contratante, del pago de intereses por mora. Por ello, revocamos la sentencia sumaria emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, y devolvemos el caso a dicho foro para la celebración de una vista para dilucidar cuáles pagos fueron realizados de forma tardía y para que se computen los intereses por mora correspondientes.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 98 DTA 224

**1.** Para un análisis histórico y detallado de esta doctrina y de su desarrollo, tanto en el derecho civil como en el anglosajón, véase la opinión disidente en parte y concurrente en parte emitida por el Juez Rigau en *Galarza Soto v. E.L.A.,* 100 D.P.R. 179, 183-203 (1979).

**2.** Leyes de Puerto Rico (1955), págs. 555-557; 32 L.P.R.A. secs. 3077-3084.