*254 TEXTO COMPLETO DE LA SENTENCIA
Ante nos los demandados apelantes, Municipio Autónomo de Caguas y el Comisionado de la Guardia Municipal del mismo municipio, en el interés de obtener la revocación de una sentencia condenatoria por los daños y peijuicios causados al demandante apelado, Ernest Torres Morales. Mediante la aludida sentencia, el Tribunal de Primera Instancia, Sala Superior de Caguas, ordenó a los demandados a pagar solidariamente al demandante $5,000 por las lesiones físicas y $15,000 por sus sufrimientos y angustias mentales. Además, se le impuso el pago de las costas e intereses al 1.50% anual.
Por los fundamentos que más adelante habremos de exponer, confirmamos la sentencia en controversia.
I
El 14 de junio de 1998, aproximadamente a las 6:00 p.m., el demandante apelado Ernest Torres Morales salió de su hogar en el Municipio de Las Piedras en dirección a Caguas con el propósito de visitar a un amigo. Tras visitar varios lugares, decidió dirigirse en su automóvil Célica azul de 1983, al restaurant de comidas rápidas Burger King ubicado en la Calle Pino cerca de Plaza del Carmen Malí. Alrededor de las 8:30 p.m. y estando en el estacionamiento del Burger King, se le acercó una patrulla de la Guardia Municipal, ocupada por dos policías municipales. Estos habían recibido una querella del gerente del Burger King cuyo contenido ubicaba a una persona sospechosa en el estacionamiento del establecimiento. Dicho negocio había sido asaltado en varias ocasiones.
Los policías intervinieron con el alegado sospechoso.
Relacionado al modo de proceder de los policías, el Tribunal recibió prueba conflictiva. La prueba del demandante apelado consistió de su propio testimonio y apuntó a que los policías municipales le confundieron con un asaltante y le pidieron que se identificara, lo cual éste no hizo. Que el apelado les indicó que no estaba cometiendo ningún delito. Los policías municipales Juan A. Reyes y Julio López Rivera, tomando en consideración la información recibida y el modo de actuar del apelado, procedieron a arrestarlo. Previo al arresto, y sin medir palabra, “le cayeron encima, le dieron en la frente, en la parte posterior del tórax y por todo el cuerpo, la frente, en la cabeza, y le dieron puños y bofetadas...[L]e decían palabras obscenas...estaba tratando de aguantar los que le estaban dando y temía por su vida”. 
*255 Luego de este incidente inicial, se allegaron al estacionamiento otros dos policías, los cuales el apelado no pudo identificar, y le siguieron dando. Procedieron a ponerle las esposas y le agredieron en las piernas. Al registrarlo, los policías municipales le encontraron una “gulvía” o cuchilla tipo “cotorra” que utilizaba para sus gallos. Lo trasladaron al cuartel y le indicaron que le someterían cargos por violación a la Ley de Armas. Continúa atestando el apelado, que en el cuartel le meten dentro de un cuarto y le siguen dando. A pesar de insistirle que se habían equivocado de persona al arrestarle, los policías no le creyeron. Eventualmente le permitieron comunicarse con una amiga, Mayra Laureano, quien era empleada del Municipio de Caguas y conocida del supervisor del tumo. Ésta acudió al cuartel y luego de dialogar con los policías y con el aval del supervisor, la policía municipal decidió no someter denuncias por la Ley de Armas. A consecuencia de lo anterior, procedieron a cumplimentar un informe cerrando el caso y consignando el apelado en dicho informe que no tomaría acción legal contra los policías municipales involucrados en el incidente. Los policías procedieron a permitirle que se retirara del cuartel, le ofrecieron llevarlo al área donde había dejado su carro, pero éste no aceptó y acudió al Centro de Diagnóstico y Tratamiento Gabriel Jiménez Sanjuijo de Caguas (CDT). El apelado se sentía adolorido, le temblaban las piernas y todo el cuerpo. En el CDT lo atendieron a la 1:00 a.m., no le tomaron placas ni le practicaron pruebas de laboratorios. Le dieron unas pastillas para el dolor. Una vez le dieron de alta, se retiró a su hogar, pero el dolor arreció y llamó a un primo para que lo llevara al Hospital Ryder de Humacao, donde le fue diagnosticado lo mismo que en el CDT de Caguas y le recetaron el mismo medicamento. Al día siguiente, acudió al Cuartel de la Policía Estatal y formuló una querella.
A consecuencia de lo precedentemente expuesto, el apelado declaró que experimenta nerviosismo, falta de sueño, aprenhesión y ansiedad. Visitó a un siquiatra porque se sentía asustado y mal de los nervios. Durante el tiempo que fue atendido por el siquiatra Dr. José Rodríguez, esté le recetó Lithio y Depakote. Desde el incidente, constantemente se siente irritado y todo le molesta.
En lo pertinente a los daños físicos, el apelado declaró que aunque no tuvo fracturas, al día de hoy en ocasiones le duelen “las piernas y eso”\ que en el cuartel “no se quejó con el supervisor de los guardias municipales por los alegados golpes recibidos y que tampoco le dijo nada de los golpes a su amiga Mayra... No tenía [los] ojos morados, ni labio partido, sólo indicó hematomas y golpes”. 
La noche del incidente “no presentaba ninguna marca de los golpes en la cara, ni en los brazos, ni alguna que fuera visible”. Alega que en esencia lo que tuvo fue hematomas a consecuencia de los golpes recibidos.
De otra parte, la prueba de la parte demandada-apelante contradijo la presentada por el demandante-apelado. Ésta ubicó al demandante en el estacionamiento del Burger King actuando de manera sospechosa y que se negó a identificarse. Que presentaba una conducta hostil y que cuando procedieron a su arresto se resistió, se tornó agresivo y tuvieron que reducirlo a la obediencia. Niegan los policías municipales que hubiesen agredido al apelado, que lo que hubo fue un forcejeo porque éste no permitió que se le esposara.
La razón para arrestarlo, según esbozada por la propia prueba del apelante, fue que el apelado se negó a dar información en el curso de la investigación que estaban realizando a raíz de la llamada del gerente de la tienda de que había una persona sospechosa en el estacionamiento del Burger King el cual había sido asaltado en ocasiones anteriores. Así también, la conducta del apelado, al no querer identificarse y al actuar de “forma sospechosa”.
Evaluada toda la prueba presentada, el Tribunal declaró con lugar la demanda y condenó a los codemandados a indemnizar al demandante por los daños sufridos.
Insatisfechos con la mencionada sentencia, el Municipio Autónomo de Caguas y el Comisionado de la Guardia Municipal acuden ante nos procurando la revocación de la misma. En su escrito de apelación señalan la comisión de dos errores por parte del T.P.I., a saber:

*256
“1. Erró el Tribunal de Primera Instancia al concluir que el Municipio de Caguas y su Comisionado de Seguridad fueron negligentes y al entender que la prueba desfilada en el juicio era suficiente para declarar con lugar la demanda.

2. Erró el Tribunal de Instancia al valorizar los daños reclamados en una cuantía excesiva que no va la par con la prueba de daños desfilada ni con el derecho vigente. ”

Los hechos creídos por el Tribunal de Primera Instancia apuntan hacia actuaciones negligentes de los policías al momento de realizar una intervención con un ciudadano que a su juicio era sospechoso de la comisión de un delito de robo. Siendo ello así, el Municipio y el Comisionado de la Guardia Municipal, en su carácter oficial, son responsables de los daños causados.
II
Nuestro ordenamiento civil provee como remedio para aquellos sujetos que sufren daños una acción denominada generalmente como demanda sobre daños y perjuicios. La referida acción surge esencialmente del Artículo 1802 de nuestro Código Civil, 31 LPRA see. 5141. Lee al precitado artículo de la siguiente manera:

“El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización. ”

Tres elementos conforman la acción de daños, a saber: acto u omisión culposo o negligente, daño sufrido y el nexo causal entre el daño y la acción u omisión. Corresponde al promovente de la acción establecer, mediante preponderancia de la prueba, los enunciados elementos. Cotto v. C.M. Ins. Co., 116 DPR 644 (1985). Procede imponer responsabilidad al promovido, si queda establecido que faltó al deber de previsibilidad, esto es, que no actuó como una persona prudente y razonable, lo que a su vez generó en daño a un tercero. Veléz Rodríguez v. Amaro Cora, 138 DPR 182 (1995).
El Tribunal Supremo definió la culpa o negligencia como aquella falta del debido cuidado y circunspección que consiste en no anticipar y prever las consecuencias racionales de un acto u omisión que una persona prudente y razonable en circunstancias similares habría de prever. Sucn. Vega Marrero v. A.E.E., 149 D.P.R. 159 (1999); Montalvo v. Cruz, 144 D.P.R. 748(1998). Empero, no es necesario que se haya anticipado la ocurrencia del daño en la forma precisa en que ocurrió; sería suficiente que éste sea una consecuencia natural y probable del acto u omisión negligente. Tormos Arroyo v. D.I.P., 140 D.P.R. 265 (1996).
La omisión que genera responsabilidad civil es aquélla cuya conducta constituye el quebrantamiento de un deber de cuidado impuesto o reconocido por ley y que de haberse realizado el acto omitido se hubiera evitado el daño. Soc. de Gananciales v. G. Padín Co., Inc., 117 D.P.R.94 (1986); Arroyo López v. E.L.A., 126 D.P.R. 682 (1990). En Arroyo López v. E.L.A., supra, el Tribunal Supremo consignó que “ante una reclamación fundada en responsabilidad por omisión, la pregunta de umbral es si existía un deber jurídico de actuar de parte del alegado causante del daño”.
De otro modo, el concepto daño en nuestro ordenamiento jurídico incluye todo aquel menoscabo material o moral que sufre una persona, ya sea en su persona, propiedad o en su patrimonio, causado al incumplir la doctrina jurídica enunciada.
No es suficiente la existencia de un daño y la acción u omisión negligente. Se hace necesario, además, la existencia de un nexo causal entre el daño y el acto culposo o negligente. Es norma reiterada en nuestra jurisdicción que la doctrina que nos rige respecto al nexo o relación causal es la doctrina de causalidad adecuada, según la cual “no es causa toda condición sin la cual no se hubiera producido el resultado, sino la *257 que ordenadamente lo produce según la experiencia general”. Valle Izquierdo v. E.L.A., 2002 J.T.S. 70; Vega Marrero v. A.E.E., supra; Cárdenas Maxán v. Rodríguez Rodríguez, 125 D.P.R. 702(1990).
La cuestión se reduce a determinar si la ocurrencia del daño era de esperarse en el curso normal de los acontecimientos, o si por el contrario, queda fuera de ese posible cálculo. J. Santos Briz, Comentarios al Código Civil y Compilaciones Florales, Madrid, Ed. Rev. de Privado, 1984, T. XXIV, pág. 267.
Por otra parte, el Artículo 1803, 31 LPRA see. 5142, que estatuye la responsabilidad vicaria, (aquélla en que se incurre cuando el daño lo produce un tercero,) dispone así:

“La obligación que impone la see. 5141 de este título es exigible, no sólo a los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.

El padre y por muerte o incapacidad de éste, la madre, son responsables de los perjuicios causados por los hijos menores de edad que viven en su compañía.

Los tutores lo son de los perjuicios causados por los menores incapacitados que están bajo su autoridad y habitan en su compañía.

Lo son igualmente los dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de las ramas en que los tuviesen empleados, o con ocasión de sus funciones.

El Estado es responsable en este concepto en las mismas circunstancias y condiciones en que serán responsables un ciudadano particular.

Son, por último, responsables los maestros o directores de artes y oficios respecto a los perjuicios causados por sus alumnos o aprendices, mientras permanezcan bajo su custodia.

La responsabilidad de que se trata esta sección cesará cuando las personas en ella mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño. ”

Empero, la responsabilidad a la que se hace referencia en el artículo mencionado en el párrafo anterior, es decir, la responsabilidad vicaria, se encuentra restringida por las disposiciones de la Ley Núm. 104 del 29 de junio de 1955 conocida como la Ley de Reclamaciones y Demandas Contra el Estado, 32 L.P.R.A. see. 3077 y siguientes, y la Ley de Municipios Autónomos de Puerto Rico de 1991, Mediante la aprobación de estos estatutos, el Estado y los Municipios renunciaron parcialmente a su inmunidad, permitiendo ser demandado cuando sus agentes o empleados por descuido, negligencia e ignorancia excusable en el desempeño de sus funciones, entre otros, le causan daños a terceros. Ni el ELA ni los municipios han cedido su inmunidad para ser demandados por actos intencionales de sus funcionarios o empleados.
El Artículo 6(d) de la Ley Núm. 104, supra, con particularidad dispone que el Estado no puede ser demandado por actos u omisiones de sus funcionarios, empleados o agentes “constitutivos de acometimiento, agresión u otro delito contra la persona, encarcelación ilegal, arresto ilegal, persecución maliciosa, calumnia, libelo, difamación y falsa representación e impostura”.
Por otro lado, el Artículo 15.002 de la Ley de Municipios Autónomos, supra, dispone en lo pertinente, que “[ejl Tribunal Superior de Puerto Rico entenderá y resolverá con meticulosidad a instancias de la parte perjudicada, sobre los siguientes asuntos:

*258
a) Revisar cualquier acto legislativo o administrativo de cualquier funcionario o organismo municipal que lesione derechos constitucionales de los querellantes o que sea contrario a las leyes de Puerto Rico.

b) Suspender la ejecución de cualquier ordenanza, resolución, acuerdo u orden de la Asamblea, del Alcalde o de cualquier funcionario del municipio que lesione derechos garantizados por la Constitución del Estado Libre Asociado de Puerto Rico o por las leyes estatales.

c) Compeler el cumplimiento de deberes ministeriales por los funcionarios del municipio.

d) Conocer, mediante juicio ordinario, las acciones de reclamaciones de daños y perjuicios por actos u omisiones de los funcionarios o empleados del municipio por malicia, negligencia e ignorancia inexcusable

De otra parte, el Artículo 15.005 de la Ley de Municipios Autónomos supra, claramente consigna que:

“No estarán autorizadas las acciones contra el Municipio por daños y perjuicios a la persona o a la propiedad por actos u omisión de un funcionario, agente o empleado de cualquier municipio:

a) En el cumplimiento de una ley, reglamento u ordenanza, aun cuando éstos resultaren ser nulos.

b) En el desempeño de una función de carácter discrecional, aun cuando hubiere abuso de discreción.

c) En la imposición o cobro de contribuciones

d) Constitutivo de acometimiento, agresión u otro delito contra la persona, persecución maliciosa, calumnia, libelo, difamación y falsa representación e impostura.

a) Ocurrida fuera de la jurisdicción territorial del Estado Libre Asociado de Puerto Rico.

b) En el desempeño de operaciones de combate por las fuerzas navales o militares en caso de guerra, invasión, rebelión u otra emergencia debidamente declarada como tal por las autoridades competentes. ”

Dada que la Ley de Municipios Autónomos, supra, en lo pertinente a la controversia que nos ocupa, y la Ley Núm. 104, supra, persiguen un mismo fin, podemos utilizar análogamente la jurisprudencia interpretativa relacionada a esta ultima.
En Leyva v. Aristud, 132 DPR 489 (1993), con respecto a la Ley Núm. 104 se dijo lo siguiente:
“A tenor con esta ley, para que un demandante pueda prevalecer en un pleito de daños y perjuicios contra el Estado por actos u omisiones de un empleado, agente o funcionario, es necesario que pruebe la concurrencia de varios elementos. Primero, tiene que probar que la persona que le causó el daño era agente, funcionario o empleado del Estado y que estaba actuado en su capacidad oficial al momento de causarle daño. Hay que establecer suficiente nexo jurídico entre la actuación negligente del policía y los intereses del Estado, por razón del ejercicio defunciones expresas o implícitas: Sánchez Soto et al v. ELA 128 DPR (1991). Segundo, es necesario que el demandante pruebe que ese agente, funcionario o empleado, actuó dentro del marco de su función. Rodríguez v. Pueblo, 75 DPR 401 (1953). En tercer lugar, el demandante tiene que probar que la actuación del empleado del E.L.A. fue negligente, y no intencional. Por último, hay que demostrar relación causal entre la conducta y el daño producido.” Artículo 6, Ley Núm. 104, supra, 32 L.P.R.A. see. 3081 (d). Véase Montes v. Fondo del Seguro del Estado, 87 DPR 199, 206, 207 (1963); Meléndez v. E.L.A., 81 DPR 824, 828 (1960).
*259 Cumplidos estos requisitos, el E.L.A. está sujeto a responsabilidad en cualquiera de los siguientes supuestos: (1) cuando el empleado, agente o funcionario, causa un daño por su-exclusiva culpa o negligencia mientras desempeña sus funciones y actúa en su capacidad oficial; (2) Cuando el empleado, agente o funcionario, causa daño mientras desempeña sus funciones y actúa en su capacidad oficial por una actuación preponderantemente negligente, aun cuando dicha conducta tenga algunos elementos intencionales. Véase Galarza Soto v. E.L.A., 109 DPR 179 (1979); Morales Garay v. Rodán Coss, 110 DPR 701 (1981); (3) cuando a pesar de que el daño fue directamente producido por un acto enteramente intencional, de los cuales no responde el Estado, hubo otros actos negligentes separados de co-causantes del daño por los cuales sí debe responder el Estado. Véase, Negrón Orozco v. Rivera, 113 DPR 712 (1983); Hernández v. E.L.A., 116 DPR 293 (1985), y (4) cuando el Estado, a través de sus agentes, es negligente por omisión al incumplir con un deber impuesto por las leyes y la Constitución.
A la luz de los preceptos antes mencionados, procede analizar si la conducta exhibida por los policías municipales permiten imponer responsabilidad al gobierno Municipal de Caguas y a su Comisionado Municipal.
La prueba creída por el Tribunal de Primera Instancia apuntó a que los policías municipales, Reyes y López, mientras desempeñaban sus funciones como tales y actuando en su capacidad oficial, procedieron a intervenir con el aquí apelado bajo la falsa creencia de que era un sospechoso de robo. Al así hacerlo, incurrieron en conducta preponderantemente negligente, aun cuando la misma tenga algunos elementos intencionales.
Lo anterior fue matizado por múltiples agresiones al apelado al éste negarse a ofrecer información y por resistirse a ser arrestado.
La actuación de los policías fue una inminentemente culposa al omitir la diligencia debida y al fallar en prever el daño que en efecto se le causó al apelado. Al evaluar el daño causado a éste y analizar retroactivamente la actuación de los policías municipales, es inescapable la conclusión que éstos fueron una consecuencia razonable y previsible de dichos actos. Toro Aponte v. E.L.A. 142 D.P.R. 46 (1997).
Somos conscientes del fino balance que hay que hacer entre el deber del Estado de combatir la criminalidad y los derechos de los ciudadanos; sin embargo, en el presente caso, dicho equilibrio se quebró siendo la negligencia de los policías municipales una inexcusable, cuyo resultado conllevó una lesión a los derechos del apelado.
En Valle v. E.L.A., 2002 J.T.S. 70 se consignó lo siguiente:

“En un justo y apropiado balance de los intereses aquí encontrados, no podemos cegarnos ante lo ocurrido al peticionario. En esencia, es nuestro deber tratar de equiparar el derecho a ser compensado que tiene el ciudadano que resulta perjudicado por la actuación culposa o negligente de un agente del Estado y el interés o, más bien, deber que tienen las autoridades gubernamentales de actuar deforma vigorosa en la investigación de las causas criminales. Ello, sin embargo, no opera como una “carta blanca” para que, en el ejercicio de tales funciones, los agentes del orden público vulneren los derechos más básicos y fundamentales que nuestra Constitución y nuestro ordenamiento le garantizan a todo ser humano. ”

La responsabilidad del gobierno municipal y sus funcionarios es clara, tomando en consideración los hechos que el TPI encontró probados y la versión de los mismos a la que le adjudicó credibilidad. Evidentemente, el foro de instancia para emitir su determinación debió otorgarle entera credibilidad al testimonio de la parte apelada. Ernest Torres Morales atestó que se encontraba en horas de la noche en el estacionamiento del Burger King, que se le acercaron unos guardias municipales y le imputaron ser uno de los *260 asaltantes del negocio que estaban buscando y al éste negarlo y no proveerles información, le agreden, lo esposan y lo trasladan al cuartel.
La determinación del foro de instancia está sostenida por la prueba que tuvo ante sí. La misma no tiene indicios de pasión, prejuicio o parcialidad. Siendo ello así, debemos ceñirnos a la sabia norma de abstención judicial y de la deferencia debida a los tribunales revisados. Como tribunal apelativo estamos impedidos de sustituir nuestro criterio por el del Tribunal de Primera Instancia. Su determinación representa un balance racional de la prueba creída.
Habiendo determinado que el primer error señalado en el recurso de apelación no se cometió, procede determinar si la cuantía de daños concedidas fue excesiva por no estar justificada por la prueba presentada.
De entrada, tenemos que consignar que la valoración de los daños es una tarea sumamente difícil. En Urrutia v. Autoridad de Acueductos y Alcantarillados, 103 D.P.R. 623 (1975), se dijo que:

“Es difícil por no decir angustioso, la gestión judicial de estimación y valoración de daños, evidenciado ello en muchos dictámenes judiciales del pasado y los disensos que esporádicamente se producen en los foros adjudicativos colegiados, como este Tribunal, animados todos sus integrantes por realizar con excelencia y a cabalidad la misión, encomendándole de impartir justicia. Bajo la formula amplia de responsabilidad consagrada en el Art. 1802 del Código Civil (31 L.P.R.A., see. 5141), no existe una tabla o computadora electrónica que recoja todos los elementos y premisas inarticuladas que nutran la valoración del dolor físico y mental humano y permita, mediante la aplicación de unas teclas o el oprimir unos botones, obtener el resultado final apropiado. Esta función descansa sobre el ejercicio discrecional prudente, juicioso y razonable del juzgador de hechos, animados por un sentido de justicia y de conciencia humana. ”

El contacto con la prueba presentada en el proceso judicial de primera instancia y las impresiones derivadas de la apreciación visual del juez es razón básica para que en ausencia de un dictamen imponiendo una cuantía ridiculamente baja o exageradamente alta, a la luz de la prueba sobre daños presentada en nuestra función, apelativa, implementemos la norma de abstención judicial, fundada en criterios de estabilidad y respecto a los Tribunales de Primera Instancia.
Al evaluar la adecuacidad del monto de los daños concedidos, nuestro ámbito de intervención se reduce a determinai- si las sumas concedidas son ridiculamente bajas o se van al otro extremo del péndulo y son exageradamente altas. De la compensación caer en estos extremos, se justificaría nuestra intervención como foro apelativo. Lo anterior enmarcado en la política judicial apelativa de concederle deferencia las determinaciones de hechos y a la adjudicación de credibilidad otorgada por el TPI. Ello tiene su razón de ser en que los tribunales apelativos reciben de primera mano la prueba por voz del testigo y tienen la oportunidad de escudriñar sus gestos, miradas, su comportamiento en la silla de los testigos, en fin su “demeanor”. A ello obedece en gran medida la deferencia que le debemos como foro apelativo a sus determinaciones.
La compensación concedida al demandante resultó adecuada si tomamos como parámetros otras similares (ajustadas a los cambios de niveles de precio y costo de vida por el transcurso del tiempo) reseñadas por el Ledo. Antonio J. Amadeo Murga, en su obra El Valor de los Daños en la Responsabilidad Civil, Tomo II, San Juan, Editorial Esmaco, 1997.
En el caso que nos ocupa, el apelante fue golpeado por dos policías municipales en múltiples ocasiones por diferentes partes del cueipo; le dieron en la frente, en la paite posterior del tórax, en la cabeza, en fin, por todo el cuerpo. Así también, le agredieron con los puños y le dieron bofetadas. Le pusieron las esposas y le pegaron por las piernas. Constantemente le humillaron, profirieron palabras obscenas y le amenazaron con enviarle a la cárcel. Una vez concluido el incidente, no se dejó acompañar por los policías que lo agredieron a buscar su *261 carro que había permanecido en el estacionamiento del Burger King porque se encontraba atemorizado de que le volvieran a agredir.
Como consecuencia de la paliza propinada, el apelado recibió atención médica en el CDT de Caguas y más tarde en la madrugada tuvo que acudir al Hospital Ryder de Humacao. En ambos lugares le recetaron pastillas para el dolor producido por los múltiples golpes y hematomas. También recibió atención por parte del Dr. José Rodríguez, siquiatra, ya que se sentía asustado, mal de los nervios y con mucha ansiedad. El nerviosismo que experimentó por la experiencia traumática sufrida le provocó pérdida del sueño y aprenhesión; todo le molestaba. Para paliar los síntomas, le recetaron Lithio y Depakote. Aún tiempo después de ocurrido el incidente, el apelado continúa experimentado dolores y en términos generales se “siente mal”.
Con el cuadro fáctico descrito, no detectamos error por parte del TPI al condenar al Municipio Autónomo de Caguas y al Comisionado de la Guardia Municipal, junto a los otros policías municipales co causantes del daño, a resarcir solidariamente al apelante por los daños sufridos que fueron determinados en $5,000 por las lesiones físicas y $15,000 por los sufrimientos y angustias mentales.
Por los fundamentos que anteceden, confirmamos la sentencia apelada.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Leda. Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones